**ZENITH RADIO CORPORATION**

v.

**MATSUSHITA ELECTRIC INDUSTRIAL CO., LTD., et al.**

**NATIONAL UNION ELECTRIC CORPORATION**

v.

**MATSUSHITA ELECTRIC INDUSTRIAL CO., LTD., et al.**

**In re JAPANESE ELECTRONIC PRODUCTS ANTITRUST LITIGATION.**

Civ. A. Nos. 74–2451, 74–3247 and M.D.L. No. 189.

United States District Court, E. D. Pennsylvania.

March 21, 1975.

Edwin P. Rome, Blank, Rome, Klaus & Comisky, Philadelphia, Pa., for plaintiffs.

Joshua F. Greenberg, Kaye, Scholer, Fierman, Hays & Handler, New York City, for moving defendants.

## OPINION

HIGGINBOTHAM, District Judge.

### INTRODUCTION

A. *THE NUE CASE, CIVIL ACTION NO. 74–3247.*

National Union Electric Corporation commenced this antitrust action against fourteen defendants in the District of New Jersey on December 21, 1970.[1] In its complaint, it alleged violations of the Antidumping Act of 1916, 15 U.S.C. § 72 (Count I); the Wilson Tariff Act, 15 U.S.C. § 8 (Count II); Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2 (Counts III and IV); Section 2(a) of the Clayton Act, as amended by the Robinson-Patman Act, 15 U.S.C. § 13(a) (Count V); and Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, and Section 1 of the Sherman Act, 15 U.S.C. § 1 (Count VI).

On February 4, 1971, certain of the defendants [2] in the action filed, *inter alia,* a motion to dismiss Count V of the NUE complaint on the grounds that it failed to state a claim upon which relief may be granted. The issue was extensively briefed by opposing counsel, and argued by them before the Honorable Robert Shaw later in 1971. Due in large part, however, to the deaths of Judge Shaw and of his successor as judge in this case, the Honorable John J. Kitchen, the issue had not been decided as of November 25, 1974.

1. The case was assigned Civil Action No. 1706–70.

2. The initial moving defendants in the NUE case were:
Sharp Electronics Corporation; Matsushita Electric Corporation of America; SONY Corporation of America; Sanyo Electric, Inc.; Toshiba America, Inc.; Mitsubishi International Corporation; and Hitachi Sales Corporation of America. They were later joined in this motion by defendants Sharp Corporation; Matsushita Electric Industrial Co., Ltd.; SONY Corporation; and Tokyo Shibaura Electric Co., Ltd.

B. *THE ZENITH CASE, CIVIL ACTION NO. 74–2451.*

On September 20, 1974, Zenith filed a similar complaint in this antitrust action, charging twenty-one defendants with violations of §§ 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2 (Counts I and II); § 7 of the Clayton Act, as amended, 15 U.S.C. § 18 (Count III); § 2(a) of the Robinson-Patman Act, 15 U.S.C. § 13(a) (Counts IV and V); the Wilson Tariff Act, 15 U.S.C. § 8 (Count VI); and the Antidumping Act of 1916, 15 U.S.C. § 72 (Count VII).

On October 29, 1974, certain of the defendants moved, pursuant to 28 U.S.C. § 1407, to transfer this action to the District of New Jersey and to consolidate it there for pre-trial purposes with the NUE case.

On November 25, 1974, the Judicial Panel on Multidistrict Litigation rendered its decision, transferring the *NUE* action to the Eastern District of Pennsylvania in order that its pre-trial proceedings might be consolidated with those in this action. On the same date, this Court, in Pre-trial Order Number 2, directed that defendants file whatever pleadings they intended to file with respect to the complaint herein on or before January 2, 1975.

On January 2, 1975, certain of the defendants herein [3] filed, *inter alia*, a motion to dismiss Count IV of the Zenith complaint for failure to state a claim upon which relief may be granted. Once again, opposing counsel thoroughly briefed the issue, which was then argued before this Court on February 17, 1975.

C. *THE INSTANT MOTIONS.*

The respective moving defendants seek dismissal of Count V of the NUE complaint and of Count IV of the Zenith complaint on the ground that neither count states a claim upon which relief may be granted. In both counts, plaintiffs seek treble damages and related relief under §§ 4 and 16 of the Clayton Act for defendants' alleged violations of § 2(a) of the Clayton Act of 1914, as amended by the Robinson-Patman Act of 1936, 15 U.S.C. § 13(a). In their respective complaints, plaintiffs allege that defendants have discriminated in price between different purchasers of commodities of like grade and quality by selling television receivers (in the NUE case) and consumer electronic products (in the Zenith case) to purchasers in the United States at prices less than those charged to purchasers of those same commodities in Japan. In their motions to dismiss, defendants argue that this alleged price discrimination does not satisfy the jurisdictional prerequisites of the Act, since the "commodities of like grade and quality" involved in one "leg" of the alleged discrimination are *not* "sold for use, consumption, or resale within the United States . . ." For reasons that will hereinafter appear, I have concluded that § 2(a) of the Robinson-Patman Act does not reach the transactions alleged by plaintiffs here. Defendants' motions to dismiss Count V of the NUE complaint and Count IV of the Zenith complaint must therefore be granted.

## DISCUSSION

■ Neither the plaintiffs nor the defendants have referred me to any case which applies § 2(a) of the Robinson-Patman Act, 15 U.S.C. § 13(a), to a set of facts similar to those alleged in the NUE and Zenith complaints. Obviously, then, this is a case of first impression. Both plaintiffs and defendants agree

---

3. The sixteen moving defendants in the Zenith case are:
SONY Corporation; SONY Corporation of America; Tokyo Shibaura Electric Co., Ltd.; Toshiba America, Inc.; Mitsubishi International Corporation; Mitsubishi Corporation; Matsushita Electric Corporation of America; Quasar Electronics Corporation; Sharp Corporation; Sharp Electronics Corporation; Hitachi Sales Corporation of America; Hitachi, Ltd.; Hitachi Kaden Hanbai Kabushiki Kaisha; Sanyo Electric Trading Co., Ltd.; Sanyo Electric, Inc.; and Motorola, Inc.

that § 2(a) reaches geographical price discriminations and price discriminations in import transactions, and there is ample authority to support their view. See *Utah Pie Company* v. *Continental Baking Co.*, 386 U.S. 685, 87 S.Ct. 1326, 18 L.Ed.2d 406 (1967) (geographical price discrimination), and the authorities collected in Zenith Memorandum at 5–13 (import transactions). It would appear, however, that in the more than sixty years since the passage of the Clayton Act,[4] no one until the present plaintiffs has ever prosecuted an action under § 2(a) where the alleged violation involved an import transaction in the United States as one "leg" of the price discrimination and a transaction that occurred wholly within a foreign country as the other.[5]

As always, when a court is called on to construe a statute, it is wise to begin by reading the statute itself. That sound principle of construction is more than usually applicable in the instant case, where no other court has ever attempted to interpret the statute in light of the facts alleged here. In pertinent part, § 2(a) of the Clayton Act of 1914, as amended by the Robinson-Patman Act of 1936, 15 U.S.C. § 13(a), reads as follows:

> "It shall be unlawful for any person engaged in commerce, in the course of such commerce, either directly or indirectly, to discriminate in price between different purchasers of commodities of like grade and quality, where either or any of the purchases involved in such discrimination are in commerce, where such commodities are sold for use, consumption, or resale within the United States . . . ."

Plaintiffs focus their argument on the clause "where either or any of the purchases involved in such discrimination are in commerce,"[6] and contend that the jurisdictional prerequisites of the Robinson-Patman Act are satisfied even if only one "leg" of the alleged price discrimination is "in commerce." Defendants stress two different segments of the statutory language: (1) the phrase "to discriminate in price between different purchasers of commodities of like grade and quality;" and (2) the clause "where such commodities are sold for use, consumption, or resale within the United States . . . ." They argue that the "commodities" in (2) refer to the "commodities" in (1), and that therefore the commodities involved in both "legs" of the price discrimination must be "sold for use, consumption, or resale within the United States . . . ." If they are not, defendants reason, then § 2(a) does not reach the alleged price discrimination.

It is true, as plaintiffs contend, that the Act is perhaps not the most specific statute enshrined in the United States Code. The Supreme Court said as much in *Automatic Canteen Co. of America* v. *F.T.C.*, 346 U.S. 61, 65, 73 S.Ct. 1017, 1020, 97 L.Ed. 1454 (1953), where it remarked that "precision of expression is not an outstanding characteristic of the Robinson-Patman Act." But even vague and general statutes are susceptible to judicial interpretation. Indeed, the interpretation of such statutes is one of the primary functions courts are called upon to perform. And this statute, while it could be clearer, is nevertheless not as opaque as plaintiffs contend.

■ In their analysis of the statute, defendants rightly point out that when

---

4. Section 2 of that Act, prior to its amendment by the Robinson-Patman Act, made it unlawful "to discriminate in price between different purchasers of commodities, which commodities are sold for use, consumption, or resale within the United States . . . ." 38 Stat. 730. This clause was retained in the Robinson-Patman Act. S.Rep.No. 1502, 74th Cong., 2d Sess. 5 (1936).

5. For a comprehensive treatment of the applicability of the antitrust laws to discriminations in price and service, see L. Schwartz, Free Enterprise and Economic Organization, 807–955 (1972 ed.).

6. Section 1 of the Clayton Act defines "commerce" to include both interstate and foreign commerce. 15 U.S.C. § 12.

Congress wished to establish a jurisdictional requirement for the Act which involved only one "leg" of a price discrimination, it did so with unmistakable clarity by using the words "where either or any of the purchases involved . . . are in commerce."[7] In the immediately following clause, however, Congress did *not* say "where either or any of the commodities are sold for use, consumption, or resale in the United States." Instead, it said merely "such commodities." Since alternate language was available in the immediately preceding phrase, I can only conclude that this choice of language was both deliberate and significant, and that defendants are correct in their contention that both commodities involved in the alleged price discrimination must be "sold for use, consumption or resale within the United States . . . ."

◼ In my judgment, then, the requirement of "use, consumption, or resale within the United States" modifies and limits the more general "in commerce" provision upon which plaintiffs primarily rely. This reading of the statute—which gives effect to, rather than ignores, the "use, consumption, or resale" clause—in no way departs from well-settled rules of statutory construction. " 'The cardinal principle of statutory construction is to save and not to destroy.' . . . It is our duty 'to give effect, if possible, to every clause and word of a statute' . . . ." *United States* v. *Menasche*, 348 U.S. 528, 538–39, 75 S.Ct. 513, 520, 99 L.Ed. 615 (1955). *Accord: Weinberger* v. *Hynson, Westcott & Dunning, Inc.*, 412 U.S. 609, 633, 93 S.Ct. 2469, 2485, 37 L.Ed.2d 207 (1973).

◼ In construing the Robinson-Patman Act, the courts have made it clear that the alleged price discrimination

must be between two different purchasers and, thus, that at least two sales must have been made. *Shaw's, Inc.* v. *Wilson-Jones Co.*, 105 F.2d 331, 333 (3d Cir. 1939). *Accord: Klein* v. *Lionel Corp.*, 237 F.2d 13, 15 (3d Cir. 1956); *Record Club of America* v. *Columbia Broadcasting System, Inc.*, 310 F.Supp. 1241, 1245 (E.D.Pa.1970); *Naifeh* v. *Ronson Art Metal Works*, 218 F.2d 202, 205–06 (10th Cir. 1954); Rowe, *Price Discrimination under the Robinson-Patman Act* 46 (1962) ("[a]n actionable discrimination in any event presupposes two completed transactions on different terms"); see *Tripoli Company* v. *Wella Corporation*, 425 F.2d 932, 934 (3d Cir. 1970), *aff'g* 286 F.Supp. 264, 266 (E.D. Pa.1968), *cert. denied*, 400 U.S. 831, 91 S.Ct. 62, 27 L.Ed.2d 62 (1970); *cf. International Film Center, Inc.* v. *Graflex, Inc.*, 427 F.2d 334, 336 (3d Cir. 1970); *North Penn Oil & Tire Co.* v. *Phillips Petroleum Co.*, 358 F.Supp. 908, 922 (E. D.Pa.1973).

◼ The "use, consumption, or resale" clause makes it equally clear that the commodities involved must eventually reach the United States. Hence, no cause of action arises under the Act unless both commodities involved in the alleged price discrimination are "sold for use, consumption, or resale within the United States." That, of course, is not the case here, for one "leg" of the price discrimination alleged by plaintiffs involves commodities that are "sold for use, consumption, or resale," not within the United States, but within a foreign country, Japan. I conclude therefore that on its face the statute does not reach the transactions alleged here.

This conclusion is supported by the legislative history of the Clayton Act.[8] In a 1914 report recommending passage of the legislation, the House Judiciary

---

7. This, of course, is the precise language upon which plaintiffs ground their argument.

8. Much of this legislative history and the other secondary materials cited in this opinion are not immediately available to the

Court. As a result, I am relying on representations of counsel that their citations of secondary authorities are accurate, both as to form and substance, and have not been taken out of context.

Committee said that "the language used makes this section applicable only to domestic commerce, or, in other words, its application is restricted to commerce carried on in the United States." H.R. Rep.No. 627, 63d Cong., 2d Sess. 7 (1914). The same statement is reprinted in the report of the Senate Judiciary Committee. S.Rep.No. 698, 63d Cong., 2d Sess. 3 (1914).

Subsequent congressional action also reinforces this interpretation of the scope of the Clayton Act. The Anti-dumping Act of 1916, which gives rights to private parties injured by dumping violations, deals specifically with price discriminations between commodities sold to purchasers for use in the United States and commodities sold to purchasers for use in foreign countries. One can only wonder why Congress enacted this statute if, as plaintiffs contend, it had already prohibited international dumping in the Clayton Act.

The legislative history of the Anti-dumping Act of 1921 indicates that Congress did not in fact believe that the Clayton Act had prohibited dumping. In 1920, during the House debate preceding the passage of H.R. 10918, upon which the 1921 Act was modeled, see 67 Cong.Rec. 261 (1921), Congressman Kitchin urged the passage of the bill "to protect all our domestic industries against the unfair competition of foreign industries." 66 Cong.Rec. 346 (1920). The Clayton Act, he said, barred "unfair competition among our domestic industries." Id.

Interpretations of the Clayton Act by departments and agencies of the federal government uniformly support defendants' contention that the Act did not reach price discrimination in different national markets. Two years after the passage of that statute, a report of the Department of Commerce recommended the enactment of legislation which would supplement the Clayton Act by outlawing the practice of dumping. Report of the Department of Commerce (1916) at 43. Three years later, the United States Tariff Commission, in a report on dumping, said that the practice had not been outlawed in this country until 1916. United States Tariff Commission, Report on Dumping and Unfair Foreign Competition in the United States (1919) at 18. The Clayton Act had, of course, been enacted in 1914. Clearly, then, neither the Commerce Department nor the Tariff Commission believed that dumping fell within the prohibitions of the Clayton Act.

In 1934, a lengthy report prepared under the direction of the Federal Trade Commission canvassed all of the anti-dumping statutes then in force, yet never once suggested that Section 2 of the Clayton Act reached dumping. Sen. Doc.No. 112, Antidumping Legislation and Other Import Regulations in the United States and Foreign Countries, 73d Cong., 2d Sess. (1934).

Since plaintiffs have not referred me to any contrary authority, it would appear that prior to 1936 neither Congress nor the various departments and agencies charged with enforcement of the antitrust statutes thought that the Clayton Act reached dumping. The Robinson-Patman Act, which was enacted in 1936, incorporated § 2 of the Clayton Act verbatim. See S.Rep.No. 1502, 74th Cong., 2d Sess. 5 (1936). Once again, plaintiffs have not called to my attention any compelling evidence in the legislative history of that Act which would suggest that Congress, by amending the Clayton Act, intended to broaden its scope to include dumping. Indeed, what authority there is points to a contrary conclusion. During the 1936 Congressional debate on the Act, the following colloquy took place.

"MR. LOGAN. . . . The purpose of the bill is to compel the treatment of all customers exactly alike when the same situation applies to all of them.

"MR. VANDENBERG. Would that apply equally to a customer in the United States and a customer out of the United States?

"MR. LOGAN. I do not think it applies to a customer out of the United States.

"MR. VANDENBERG. The Senator does not think the provision he is talking about would prevent sales of surplus products abroad at lower prices?

"MR. LOGAN. I do not. As I recall, the provisions of the bill are confined specifically to the United States and possessions of the United States."

80 Cong.Rec. 6333 (1936).

Clearly, this colloquy does not support plaintiffs' position.

Plaintiffs argue that since the criminal penalties imposed by § 3 of the Robinson-Patman Act, 15 U.S.C. § 13a, are more clearly limited to price discrimination in two sales within the United States, the less specific language of § 2 should be read more broadly to include the transactions alleged here. I find this argument unpersuasive. The legislative history of § 2 and § 3 does not imply such a conclusion, nor has any commentator on the two sections ever suggested it. Indeed, the legislative history of § 3 belies plaintiffs' contention. Senator Borah, a principal author of § 3, in a discussion of the relationship between § 2 and § 3, said: "I think the objectives of the two bills are the same." 80 Cong.Rec. 6333 (1936). He admitted that there were differences between the two sections, but insisted that "both bills seek to accomplish the same general purpose." Id. In his discussion of the differences between the two sections, he never once intimated that the Robinson-Patman Act reached the conduct alleged here.

Subsequent interpretations of the Act to which the parties have referred me are similarly devoid of support for plaintiffs' position. As recently as 1968, a White House task force, while recommending that portions of § 2(a) of the Robinson-Patman Act be amended, nevertheless said flatly that "[l]ike the present Act, the proposed revision applies only to discrimination among transactions in goods or services to be used within the United States. Discriminations between domestic and international transactions are governed by international treaties, such as the General Agreement on Tariffs and Trade, and by the Antidumping Act." Report of the White House Task Force on Antitrust Policy (1968), Appendix C at 5–6. This statement, like each of the other departmental or agency interpretations discussed previously, falls somewhat short of a ringing endorsement of plaintiffs' theory.

Plaintiffs argue strenuously that "nowhere in the statute, or in the legislative history, and in no judicial decision has there been any exculpation granted to predatory, discriminatory sales in the United States arising from import transactions." (Zenith Memorandum at 13.) The weakness in plaintiffs' position is that "nowhere in the statute, or in the legislative history, and in no judicial decision" has there been any extension of the Act to permit it to reach the transactions alleged here. On the contrary, the courts have consistently read the Act as it was written, not as it might have been written.

As recently as December 17, 1974, the Supreme Court held that Congress had not exercised its full constitutional power under the Commerce Clause when it passed the Act. Accordingly, the Court declined to read the "in commerce" provision of the Act to include intrastate sales, even though those intrastate sales had an impact on interstate commerce. *Gulf Oil Corp.* v. *Copp Paving Co., Inc.*, 419 U.S. 186, 95 S.Ct. 392, 42 L.Ed.2d 378 (1974).

Plaintiffs have produced not a single authority which on a fair reading suggests, let alone compels, the result they urge me to reach here. Defendants assert that, until the present plaintiffs, no one had ever dreamed that § 2(a) of the

Robinson-Patman Act forbade price discriminations in different national markets. I am not able to make such an absolute judgment on the creativity of other potential plaintiffs. It is certainly true, however, that in the past sixty years no reported case has ever dealt with the issue plaintiffs raise here. Contradicted by the language of the statute and unsupported by any persuasive legal authority, plaintiffs' position on the instant motion, though extensively briefed and ably argued, is without merit. Section 2(a) of the Robinson-Patman Act does not reach price discriminations in different national markets.

## CONCLUSION

Plaintiffs have contended that my refusal to extend the reach of the Robinson-Patman Act to include the price discriminations alleged in the instant case "would undermine the broad national policy reflected in the antitrust laws of fostering fair and vigorous competition in the United States." (Zenith Memorandum at 18.) I cannot accept this *in terrorem* argument. The plaintiffs are scarcely without a remedy. The antitrust laws of the United States provide them with a panoply of other remedial statutes, including Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2, the Wilson Tariff Act, 15 U.S.C. § 8, and the Antidumping Act of 1916, 15 U.S.C. § 72. Plaintiffs have been tenaciously prosecuting the remaining counts of their respective complaints under these very statutes. I am confident they will continue to do so with undiminished vigor.

Defendants' motions to dismiss Count V of the NUE complaint and Count IV of the Zenith complaint are GRANTED. An appropriate order will be entered.

This opinion shall constitute the Court's finding of facts and conclusions of law as required by Rule 52(a) of the Federal Rules of Civil Procedure.