## O. HOMMEL COMPANY

### v.

## FERRO CORPORATION.

### Civ. A. No. 76–1299 B.

United States District Court,
W. D. Pennsylvania.

June 21, 1979.

David B. Buerger, Martha A. Zatezalo, Pittsburgh, Pa., George I. Meisel, Cleveland, Ohio, for plaintiff.

Arthur J. Schwab, Pittsburgh, Pa., for defendant.

## MEMORANDUM OPINION

KNOX, District Judge.

Plaintiff (Hommel) and defendant (Ferro) compete in the United States in the sale of frit, a basic ingredient in porcelain enamel and ceramic finishings. Plaintiff filed this antitrust suit against defendant alleging that Ferro violated § 2 of the Sherman Antitrust Act, 15 U.S.C. § 2, and the Robinson-Patman Amendment to the Clayton Act, 15 U.S.C. § 13, by selling frit to certain customers below cost, discriminating in price between purchasers in the sale of frit "of like grade and quality," and granting illegal quantity discounts to certain customers to the detriment of competition in the frit industry. Ferro filed a motion for summary judgment on March 12, 1979. Comprehensive briefs were submitted by both parties and oral argument was heard on April 9, 1979. After careful consideration of the complex issues involved in this case, the court has determined that the motion must be denied.

Initially, the court notes that summary judgment should not be granted except on a clear showing that no genuine issue of any material fact exists. *Ely v. Hall's Motor Transit Co.*, 590 F.2d 62 (3rd Cir. 1978). Summary judgment is rarely appropriate in an antitrust case. *Poller v. Columbia Broadcasting System*, 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962). Cf. *Mid-West Paper Products Co. v. Continental Group, Inc.*, 596 F.2d 573 (3rd Cir. 1979).

### I. Geographic Price Discrimination

At oral argument, plaintiff contended that paragraph 8(a) of its complaint contained a claim of geographic price discrimination at the primary line level. (See transcript of argument on motion for summary judgment at 25–28). Plaintiff alleges that Ferro uses the profits it makes from sales of frit in foreign markets in which plaintiff does not compete to subsidize the losses it incurs by selling frit at or below cost in the United States. In *Zenith Radio Corp. v. Matsushita Electric Industrial Co., Ltd.*, 402 F.Supp. 244 (E.D.Pa.1975), petition denied, 521 F.2d 1399 (3rd Cir. 1975), a similar

contention was rejected by (now Circuit) Judge Higginbotham who held that " . . . no cause of action arises under the [Robinson-Patman] Act unless both commodities involved in the alleged price discrimination are 'sold for use, consumption, or resale within the United States.' " 402 F.Supp. at 248. The court has not located any case which holds that § 2(a) of the Robinson-Patman Act forbids price discrimination between domestic and foreign markets. Consequently, at trial Hommel will not be permitted to introduce any evidence supporting this theory of liability.

## II. Sales Below Cost

In order to prove an attempt to monopolize under § 2 of the Sherman Act, plaintiff must establish that the defendant had both a specific intent to monopolize the relevant market and the requisite market power to create a dangerous probability of success. *Times-Picayune v. United States*, 345 U.S. 594, 73 S.Ct. 872, 97 L.Ed. 1277 (1953); *Coleman Motor Co. v. Chrysler Corp.*, 525 F.2d 1338 (3rd Cir. 1975). In order to establish a prima facie Robinson-Patman violation, plaintiff must show 1) that one or more of the purchases involved is "in commerce," 2) that there has been a discrimination in price between different purchasers of products of like grade and quality, and 3) that the effect of the price discrimination "may be substantially to lessen competition or tend to create a monopoly in any line of commerce, or to injure, destroy, or prevent competition with any person who either grants or knowingly receives the benefit of such discrimination . . . ." See *William Inglis & Sons v. ITT Continental Baking Co., Inc.*, 461 F.Supp. 410 (N.D.Cal. 1978). Where there is no direct evidence of an attempt to monopolize under § 2 of the Sherman Act or a likelihood of injury to competition under Robinson-Patman, these elements may be inferred from a showing of predatory intent, and this intent, under both Acts, may be established by proof of

predatory pricing. *Utah Pie Co. v. Continental Baking Co.*, 386 U.S. 685, 87 S.Ct. 1326, 18 L.Ed.2d 406 (1967); *Janich Bros. Inc. v. American Distilling Co.*, 570 F.2d 848 (9th Cir. 1977); *Pacific Engineering v. Kerr-McGee*, 551 F.2d 790 (10th Cir. 1977).

The major issue in dispute in this case concerns the nature of the predatory pricing evidence which will be admissible at trial to permit the inference of predatory intent. Plaintiff contends that evidence of sales below total cost is permissible while defendant argues that proof of sales below marginal cost, or at least variable cost,[1] is required before a jury may infer predatory intent.

The concept of predation in antitrust cases involves a temporary sacrifice of net revenues in the expectation of greater future profits once competition has been eliminated. Practical application of the term "predatory intent" and a determination of the type of pricing evidence which is admissible to permit an inference of such intent, however, has created difficulty for the courts. Various courts have wrestled with conflicting economic analyses in an attempt to fashion a workable formula for use in predatory pricing cases. In *Utah Pie Co. v. Continental Baking Co.*, supra, the Supreme Court identified the standard for distinguishing between predatory and competitive pricing as pricing below fully allocated cost. The Court defined "below cost" as "less than . . . direct cost plus an allocation for overhead." 386 U.S. at 698, 87 S.Ct. at 1334. Ferro argues that the Court did not confront the pricing issue squarely in *Utah Pie*, that its reference to "below cost" pricing was an "offhand" or "isolated" comment, and that, therefore, its determination is not binding on this court. We cannot accept this interpretation. The decision by the Court of Appeals in *Utah Pie*, 349 F.2d 122 (10th Cir. 1965), distinguishes between the profit incurred before deduction for overhead and the loss re-

---

**1.** Marginal cost is the cost of manufacturing "the last unit." Variable costs are the costs that vary with changes in output, as distinguished from "fixed costs" which remain constant despite changes in output. Average variable cost is variable cost divided by the output. The use of variable cost as a substitute for marginal cost is not at issue in this case.

flected after overhead was considered. One issue before the Supreme Court, then, was whether overhead was to be considered in price discrimination cases, and the Court determined that it was.

The recent trend in the Circuits, however, has been to adopt a below marginal or variable cost test. *Janich Bros. Inc. v. American Distilling Co., supra; Pacific Engineering v. Kerr-McGee, supra; Hanson v. Shell Oil Co.*, 541 F.2d 1352 (9th Cir. 1976); *International Air Industries, Inc. v. American Excelsior Co.*, 517 F.2d 714 (5th Cir. 1975). Most of these cases make little attempt to distinguish Utah Pie. Generally, they rely instead on a law review article which first proposed this standard. Areeda & Turner, "Predatory Pricing and Related Practices Under Section 2 of the Sherman Act," 88 Harv.L.Rev. 697 (1975). Areeda and Turner's analysis, however, has not survived unscathed. See O. Williamson, "Predatory Pricing: A Strategic and Welfare Analysis," 87 Yale L.Rev. 284 (1977); Scherer, "Predatory Pricing and the Sherman Act: A Comment," 89 Harv.L.Rev. 869 (1976); Scherer, "Some Last Words on Predatory Pricing," 89 Harv.L.Rev. 901 (1976).

■ Although we recognize that the post-*Utah Pie* cases have almost unanimously rejected the Supreme Court's standard in favor of the Areeda and Turner test, and although evidence of sales below marginal or variable cost may· be a more accurate economic indicator of predatory intent in some cases, in the absence of the acceptance of this theory by the Third Circuit and in the face of *Utah Pie*, we are not prepared to foreclose plaintiff from presenting evidence of sales below total cost.

■ In some circumstances, of course, sales below total cost may enhance competition even though a particular competitor may be injured. Such a result would be consistent with the goal of the antitrust laws. In other circumstances, however, sales below total cost could permit an inference of monopolistic or predatory intent. A determination of this issue cannot be made on a motion for summary judgment; it must await a full trial on the merits.

For the reasons set forth in this memorandum opinion, defendant's motion for summary judgment will be denied and plaintiff will be permitted to offer evidence of sales below total cost at trial. An appropriate order will be entered.