**LAITRAM MACHINERY, INC.**

v.

**CARNITECH A/S, a Danish corporation, Seafood Equipment Development Corp., and Skrmetta Machinery Corp.**

Civ. A. No. 92–3841.

United States District Court,
E.D. Louisiana.

April 24, 1995.

Barry Louis LaCour, Laitram Corp., Harahan, LA, Robert Perry McCleskey, Jr., Warren Anthony Cuntz, Jr., Phelps Dunbar, New Orleans, LA, Timothy J. Malloy, Gregory J. Vogler, D. David Hill, McAndrews,

Held & Malloy, Chicago, IL, for Laitram Machinery Inc.

Bernard Marcus, Charles Kirk Reasonover, Marc J. Yellin, Deutsch, Kerrigan & Stiles, New Orleans, LA, for Carnitech A/S.

Harry Simms Hardin, III, Patrick Hannon Patrick, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, LA, Elsie T. Apthorp, Maitland, FL, for Seafood Equipment Development Corp.

Charles Emmett Pugh and Rickey Ray Hudson, National Law Offices of Pugh/Associates, Patent & Trademark Attorneys Ltd., New Orleans, LA, for Skrmetta Machinery Corp., Dennis Skrmetta, Barbara Skrmetta, Eric Skrmetta and Melissa Skrmetta.

Robert Perry McCleskey, Jr., Warren Anthony Cuntz, Jr., Phelps Dunbar, New Orleans, LA, Timothy J. Malloy, Gregory J. Vogler, McAndrews, Held & Malloy, Laitram Corp., George Charles Lapeyre, Brent A. Ledet, James M. Lapeyre, Donald Quick and James Saul.

Barry Louis LaCour, Laitram Corp., Harahan, LA, Robert Perry McCleskey, Jr., Warren Anthony Cuntz, Jr., Phelps Dunbar, New Orleans, LA, Timothy J. Malloy, Gregory J. Vogler, D. David Hill, McAndrews, Held & Malloy, Chicago, IL, for Asgeir Bjarnasson.

## ORDER AND REASONS

JONES, District Judge.

Pending before the Court is "Plaintiff's Second Motion for Summary Judgment," which was taken under submission on a previous date without oral argument. After reviewing the memoranda of the parties, the record and the applicable law, the Court GRANTS the motion in part and DENIES the motion in part.

### Background

Plaintiff, defendant in counterclaim and third-party defendant Laitram Machinery (hereinafter "Laitram") moves for summary judgment as to various counts of the counterclaim/third-party claim of Skrmetta Machinery Corp. and various Skrmetta family members, respectively (hereinafter, collectively, "Skrmetta").

Laitram filed suit in November 1992 against three defendants, Seafood Equipment Development Corporation, a Florida corporation; Carnitech A/S, a Danish corporation, and Skrmetta. The lawsuit alleged federal antitrust law violations, Louisiana antitrust law violations, and violations of the Lanham Act, 15 U.S.C. § 1125(a), based upon alleged false representations about Laitram's products and alleged patent coverage for defendant's products. The lawsuit also sought declaratory judgment that Laitram was not infringing on a patent allegedly owned (or assigned) to the Florida corporation and, further, alleged claims pursuant to the Louisiana Unfair Trade Practices Law, LSA–R.S. 51:1405 *et seq.*, as well as claims of defamation and conspiracy to defame against the Florida and Danish corporations.

The claims against the Florida and Danish corporations have been settled.

Skrmetta filed a counterclaim/third-party claim against Laitram alleging state and federal antitrust claims, Lanham Act claims, Louisiana Unfair Trade Practices claims, and an abuse of process claim. The counterclaim also sought declaratory judgment of patent invalidity, unenforceability and/or non-infringement of three patents owned by Laitram (hereinafter, the '794 patent, the '538 patent and '265 patent).[1] This count sought a declaratory judgment that Skrmetta's shrimp cooking and/or peeling machines do not infringe on Laitram's patents for its machines. This count also alleged initially and in subsequent amendments that Laitram or its parent company, The Laitram Corporation, engaged in "inequitable conduct" in obtaining certain patents, including those three noted above as well as the re-issued patent of the '794 patent, which was reissued as Re. 34,646 (hereinafter " '646"). Skrmetta alleged a lack of candor with the U.S. Patent and Trademark Office and the examining

---

1. The actual patent numbers are 4,862,794; 5,184,538; and 5,120,265. The Court notes that, by Order dated March 21, 1995, the United States Court of Appeals for the Federal Circuit granted Laitram's Petition for Mandamus and, among other things, ordered that the declaratory judgment action be dismissed in regard to the '538 and '265 patents. (R.Doc. 238.)

patent attorneys by Laitram, its parent corporation or their predecessors in interest when those patents were obtained.[2]

### Law and Application

#### I. Antitrust Allegations

#### A. Conspiracy under Antitrust Law

■ The first issue on summary judgment is whether a conspiracy exists under applicable law so as to sustain Skrmetta's allegations. There is no doubt that the coordinated activities of a parent corporation with a wholly-owned subsidiary or with its employees is not a conspiracy that is actionable under Section 1 of the Sherman Act. *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 768–72, 104 S.Ct. 2731, 2740–42, 81 L.Ed.2d 628 (1984).

■ Laitram contends that there can be no antitrust claim because a conspiracy is legally impossible among Laitram, its employees and wholly-owned subsidiaries. Skrmetta concedes, as it must, that *Copperweld* controls in regard to any conspiracy between Laitram and its employees. However, Skrmetta argues that a foreign agent of Laitram, Asgeir Bjarnason, is actually an independent agent, thus precluding summary judgment under *Copperweld*. Skrmetta relies on the argument of Bjarnason's counsel at the motion to dismiss for lack of personal jurisdiction. (R.Doc. 229, Exh. A, pp. 16–18.) Further the Court notes that in his motion to dismiss for lack of personal jurisdiction, Bjarnason stated: "Here, Bjarnason was acting as LMI's representative in Iceland for sales and servicing activity in Iceland." (R.Doc. 127, memorandum in support of Motion to Dismiss for Lack of Personal Jurisdiction, p. 8.)

In view of the statements by Bjarnason's counsel at the oral argument of the motion to dismiss for lack of personal jurisdiction and the statements by Bjarnason in pleadings in support of that motion, the Court finds that there is a genuine issue of material fact whether Bjarnason was an independent agent or employee of Laitram. Thus, there is also a genuine issue of material fact as to whether a conspiracy existed, necessitating a trial in this matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986).

Laitram contends that even if Bjarnason was its agent, various cases construing *Copperweld* provide that a corporation cannot conspire with its agents. *See Ryko Mfg. Co. v. Eden Services*, 823 F.2d 1215 (8th Cir. 1987); *The Sample, Inc. v. Pendleton Woolen Mills, Inc.*, 704 F.Supp. 498, 502 (S.D.N.Y. 1989). However, Laitram fails to understand the true import of those cases. *Ryko* relies on *Pink Supply Corp. v. Hiebert, Inc.*, 788 F.2d 1313 (8th Cir.1986). In *Pink Supply* the Court found that if corporate agents, who are even separately incorporated, "function as an integral part of the corporate entity, represent no step in the distribution chain, act for the corporate principal's benefit and are functionally indistinguishable from other employees, [they] may lack the independent economic consciousness necessary to be considered conspirators separate from their principal." *Id.* at 1316.

Similarly, in *Pendleton Woolen Mills*, the court stated that "assuming the sales agents have limited authority," agents and a manufacturer cannot conspire for purposes of violation of Section 1 of the Sherman Act. *Pendleton Woolen Mills*, 704 F.Supp. at 502.

■ On the present record, Laitram has not shown that Bjarnasson is so functionally distinguishable from other Laitram employees that he cannot conspire with Laitram. As a result, there is a genuine issue of material fact necessitating a trial that makes summary judgment inappropriate on the Section 1, Sherman Act, claims. *Anderson, supra.*[3]

---

**2.** Laitram brought a motion to dismiss the counterclaim previously but supported it with matters outside the pleadings. The former judge to whom this matter had been assigned construed the motion to dismiss as a motion for summary judgment and denied it without prejudice. (Document 90, Order and Reasons, entered April 29, 1994.)

**3.** In its opposition, Skrmetta also contends that the alleged conspiracy claim falls within a recognized exception to the principle set forth in *Copperweld, i.e.*, because the employees of Laitram received certain financial rewards, they had independent financial interests in the success of the conspiracy under Section 1 of the Sherman Act. *See H & B Equipment Co., Inc. v. Interna-*

### B. Predatory Pricing and/or Price Discrimination Claims

#### 1. Alleged Violation of Robinson–Patman Act

Laitram argues that any claims of alleged violations of the Robinson–Patman Act which occurred in foreign countries are not actionable. Further, any claims of violations of the Robinson–Patman Act dealing with services also are not actionable. In that same vein, Laitram also contends that summary judgment is proper on the claims involving Laitram's lease of machines to Point Adams because the Robinson–Patman Act does not cover leases.

The Robinson–Patman Act, 15 U.S.C. § 13(a) states, in pertinent part:

It shall be unlawful for any person engaged in commerce, in the course of such commerce, either directly or indirectly, to discriminate in price between different purchasers of commodities of like grade and quality, whether either or any of the purchases involved in such discrimination are in commerce, where such commodities are sold for use, consumption, or resale within the United States or any Territory thereof or the District of Columbia or any insular possession or other place under the jurisdiction of the United States where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce, or to injure, destroy, or prevent competition with any person who either grants or knowingly receives the benefit of such discrimination, or with customers of either of them....

*tional Harvester,* 577 F.2d 239, 244 (5th Cir. 1978).

This argument fails for two reasons. First, although Skrmetta argues that one employee, Brent Ledet, received $100,000 and other defendants have been likewise rewarded, Skrmetta offers no deposition testimony, answers to interrogatories or otherwise to support these allegations. Thus, the argument falls short under Fed. R.Civ.P. 56(c).

Moreover, the exception in *H & B Equipment* is not as broad as Skrmetta contends. The Fifth Circuit defined the exception as "the rare instance in which employees have an independent personal stake in achieving the object of the

■ Courts have found that the Robinson–Patman Act applies only to sales of commodities within the United States or its territories, etc., but not foreign countries. *See, e.g., Zenith Radio Corp. v. Matsushita Electrical Industrial Co.,* 402 F.Supp. 244, 248 (E.D.Pa. 1975). Further, this act only applies to sale of commodities, which the courts have construed to mean "goods, wares, merchandise, machinery and supplies," not "services and intangibles." *Baum v. Investors Diversified Services, Inc.,* 409 F.2d 872, 875 (7th Cir. 1969) (holding that mutual fund shares are not commodities).

■ Laitram contends that its offer of a sales contracts in India and sales in Iceland do not fall within the ambit of the Robinson–Patman Act as they occur in foreign countries. On this argument, Laitram is correct, and Skrmetta does not even oppose it, failing to even mention Laitram's argument in its opposition. Thus, pursuant to Fed.R.Civ.P. 56(c), because there is no genuine issue of material fact, Laitram is entitled to summary judgment as a matter of law on this issue.

■ Laitram also argues that its offer of below-cost service and maintenance contracts in Iceland and Norway do not confer a cause of action under the Robinson–Patman Act for two reasons: their foreign nature and their service nature. For the same reasons as set forth above, Laitram is entitled to summary judgment on this issue also.[4]

■ Laitram also contends that it is entitled to summary judgment on the issue of leasing machinery to Point Adams because the Robinson–Patman Act does not cover

conspiracy." *Id.* In rejecting the applicability of the exception in *H & B Equipment,* the court of appeals distinguished several cases relied on by the exception's proponent. "In the cited cases, the employees had interests in economic entities separate from the principal defendant.... Without such an organization legally distinct from the principal defendant, it would be impossible for an employee to have an interest that was truly 'independent.'" *Id.*

Therefore, the mere fact that the employees of Laitram received financial awards is insufficient for the exception to apply in this case.

4. Again Skrmetta does not address this point in its opposition to summary judgment.

leases. However, the case that Laitram principally relies on for this proposition, *Metro Communications v. Ameritech Mobile Communications, Inc.*, 788 F.Supp. 1424, 1436–37 (E.D.Mich.1992) specifically recognizes that, where a lease is involved, courts must look to the dominant nature of the lease transaction to determine whether a customer was leasing services or purchasing commodities. In this case, the Court does not have enough information on the record before it to make this determination. Therefore, summary judgment is inappropriate on this issue.[5]

### 2. Predatory Pricing

■ Laitram also contends it is entitled to summary judgment on its alleged sale of machinery and spare parts to High Seas, Pacific Choice and other customers at a discount, as set forth in Raphael Skrmetta's deposition, attached to its motion. (Exh. B. to Laitram's memorandum in support of its motion, pp. 295 and 689–90, R.Doc. 221). Further, Laitram argues summary judgment is proper on the issue of leasing of machinery to Point Adams and others at alleged losses to Laitram. *Id.* at 293–94.

Laitram's argument is based on the Supreme Court's interpretation of the first of two prerequisites to recover under either the Robinson–Patman Act or Section 2 of the Sherman Act. "First, a plaintiff seeking to establish competitive injury resulting from a rival's low prices must prove that the prices complained of are below an appropriate measure of its rival's costs." *Brooke Group Ltd. v. Brown & Williamson Tobacco Corporation*, —— U.S. ——, ——, 113 S.Ct. 2578, 2587, 125 L.Ed.2d 168 (1993). *See International Air Industries, Inc. v. American Excelsior Co.*, 517 F.2d 714, 723 (5th Cir.1975) ("[W]e believe that a price above average cost is a fairly competitive price for it is profitable to the monopolist if not to its rivals; in effect, the price excludes only less efficient firms.").

The Supreme Court also has stated that the Sherman Act is violated only by predatory pricing, not low pricing. *Atlantic Richfield Company v. USA Petroleum Company*, 495 U.S. 328, 339–40, 110 S.Ct. 1884, 1891–92, 109 L.Ed.2d 333 (1990).

Laitram attaches to its present motion an affidavit from Charles Lapeyre, an employee, officer and board member of Laitram and also a board member of its parent company, The Laitram Corporation. (Exh. J. attached to Laitram's memorandum in support, R.Doc. 221.) This affidavit states that at certain times Laitram offered a 10% discount off the price of spare parts to a company named High Seas, of Dulac, Louisiana. *Id.*, Paragraph 4. "[Laitram's] average cost is about 30 percent of the listed selling price for spare parts. Thus, even with a 10% discount, [Laitram] made a substantial profit on the sale of spare parts to High Seas." *Id.*

The affidavit also states that, in regard to a sale of shrimp peeling machines to Pacific Choice Co. in Oregon, Pacific Choice paid about $50,000 each for two rebuilt peeling machines. *Id.*, paragraph 5. Laitram's average cost was less than $15,000 per machines when they were originally built. *Id.* "[Laitram] made a gross profit of at least $70,000 from the sale of these two peeling machines to Pacific Choice." *Id.*

The affidavit further states that, as to the April 1990 lease of machines to Point Adams, another company on the West Coast, that the lease was guaranteed by Point Adams for a minimum 18–month period. *Id.*, Paragraph 6. Over the 18–month period, Lapeyre estimated Laitram's expenses to be about $71,000, which including finance charges to build machinery, freight charges and installation charges. *Id.* At the same time, Laitram's profits were about $132,500 over the 18–month period. *Id.* "Similar profits have been attained by [Laitram] on all leases involving trade-backs or buy-backs or offering rent deferral for initial periods." *Id.*

The affidavit shows that Laitram's costs are not below an appropriate measure of its costs. Indeed, Laitram made a profit on the transactions at issue even with the discounts

---

5. Nevertheless, as will be shown in the next section, Laitram is entitled to summary judgment on the claims involving Point Adams and the lessening of competition because there was no predatory pricing.

or lease terms. In opposition, Skrmetta offers no specifics to rebut these statements in Lapeyre's affidavit. Therefore, because Skrmetta cannot meet the first prerequisite established by the Supreme Court in *Brooke Group* for predatory pricing under Section 2 of the Sherman Act and the Robinson–Patman Act, Laitram is entitled to summary judgment. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

### C. Antitrust Injury

■ In its counterclaim/third-party claim Skrmetta also complains of monopolistic antitrust violations by Laitram arising out of Laitram's purchase of Skrmetta machinery being sold by other companies. (Paragraphs 31–34, Skrmetta's counterclaim, R.Doc. 70.) "After purchasing the machines, [Laitram and the other defendants in counterclaim/cross-defendants] remove the usable parts and destroy the remaining Skrmetta machines." *Id.,* Paragraph 31.

The issue is whether Laitram's purchase of these Skrmetta machines constitutes an antitrust injury. If not, then Skrmetta's claim must be dismissed for lack of antitrust standing. *See Anago, Inc. v. Tecnol Medical Products, Inc.,* 976 F.2d 248, 249 (5th Cir. 1992).

An "injury, although causally related to an antitrust violation, nevertheless will not qualify as 'antitrust injury' unless it is attributable to an anti-competitive aspect of the practice under scrutiny 'since "[i]t is inimical to [the antitrust] laws to award damages" for losses stemming from continued competition." ' " *Atlantic Richfield,* 495 U.S. at 334, 110 S.Ct. at 1889, quoting *Cargill, Inc. v. Monfort of Colorado, Inc.,* 479 U.S. 104, 109–10, 107 S.Ct. 484, 488–89, 93 L.Ed.2d 427 (1986) (editing in original).

In this case Skrmetta is complaining about Laitram's purchase of its machines after they have been sold to third parties and Laitram's subsequent use of these machines for the sale of spare parts. On the basis of the record before the Court, there is no anti-competitive aspect in Laitram's purchase of these machines.

In its counterclaim/cross-claim, Skrmetta refers to two specific instances of this alleged antitrust injury. The first involves the purchase by Laitram of machines from the Terrebonne Canning Plant in Dulac, Louisiana. (Paragraph 33, R.Doc. 70.) The second instance is the purchase of machines from the Portland Shellfish Company of Portland, Maine. *Id.,* Paragraph 34.

As to the first instance, it is clear from the deposition of Raphael Skrmetta attached to Laitram's memorandum (Exh. B, pp. 459–61, R.Doc. 221) and also from another affidavit of Charles Lapeyre on behalf of Laitram (Exh. K, paragraph 8, R.Doc. 221) that the purchase of these machines took place at a sealed bid auction in which Skrmetta chose not to participate. As such, Laitram's purchase of these machines was not anticompetitive. The auction was open to all. It was Skrmetta's decision not to bid. This is not antitrust injury.

As to the second instance involving the purchase of machines in Maine, the affidavit of Lapeyre also states that Laitram purchased the machines from an equipment broker, which Laitram believed "was selling them for Portland Shellfish Company, which was going out of business. These machines are still in storage, and their parts have been used elsewhere." (Exh. K to Laitram's memorandum in support, Paragraph 9, R.Doc. 221.) Once again, the fact that Laitram participated in a public purchase of this equipment shows that this was not an anti-competitive action which caused antitrust injury.

The Court's conclusion is underscored by the fact that, once again, Skrmetta has failed to allege any specific, genuine issues of fact in opposition to Laitram's contentions in accord with Fed.R.Civ.P. 56(c). Thus, Laitram is entitled to summary judgment on these issues.

### D. Monopoly Power

As stated, Skrmetta has not come forward with any genuine issues of material fact in regard to the predatory pricing or antitrust injury issues raised in Laitram's motion for summary judgment. Skrmetta simply argues generally that summary judgment is

inappropriate because a jury should be allowed to determine whether Laitram has exercised monopoly power in violation of Section 2 of the Sherman Act, as alleged in its amended counterclaim as count 1A. (R.Doc. 88.)

■ The Supreme Court has stated that two elements must be proven to establish a violation under Section 2: "(1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident." *Eastman Kodak Company v. Image Technical Services, Inc.*, 504 U.S. 451, 481, 112 S.Ct. 2072, 2089, 119 L.Ed.2d 265 (1992). Monopoly power requires something more than market power under Section 1 of the Sherman Act. *Id.* at 481–83, 112 S.Ct. at 2090.[6]

■ The second element of a monopoly claim is the use of monopoly power to foreclose competition, gain competitive advantage or destroy a competitor. *Id.* at 481–83, 112 S.Ct. at 2090. Liability turns on business justification. *Id.* 483–85, 112 S.Ct. at 2091.

■ Skrmetta argues that there is a question as to Laitram's intent in purchasing used Skrmetta machines, *i.e.*, whether Laitram is doing this to prevent Skrmetta from realizing income from selling spare parts and repair service and to prevent any further Skrmetta presence in the market. Skrmetta further contends that another reason for Laitram's interest in used Skrmetta machines is to prevent its customers from purchasing used Skrmetta machinery, with the result that the customer exercises its right to cancel the lease with Laitram. However, Skrmetta does not offer any concrete facts in support of its argument. Laitram has set forth specific, unrebutted facts showing it has not engaged in predatory pricing or bought Skrmetta machines in other than public sales. Skrmetta's general argument in response fails to establish the necessary elements to prove a Section 2 claim, *i.e.*, that

Laitram possesses monopoly power *and* that the acquisition or maintenance of that power is the result of anything other than superior product, business acumen or historic accident. Because Skrmetta cannot prove the elements of a Section 2 claim, Laitram is entitled to summary judgment. *See Celotex*, 477 U.S. at 322–23, 106 S.Ct. at 2552.

E. Conclusion in Regard to Antitrust Allegations

In summary, Laitram's summary judgment should be denied on the issue of "conspiracy" under Section 1 of the Sherman Act because there is a genuine issue of material fact as to Bjarnason's relationship with Laitram. However, summary judgment should be granted on the claims under Section 2 of the Sherman Act and the Robinson–Patman Act because, respectively, there is no genuine issue of material fact that Laitram did not engage in predatory pricing in violation of the Sherman Act and because the Robinson–Patman Act does not cover alleged violations occurring outside of the United States or not involved with the sales of commodities. Similarly, summary judgment should be granted on any allegations of below-cost pricing under the Robinson–Patman Act and Sherman Act as well as on allegations of Section 1 violations arising from Laitram's purchase of used Skrmetta machines. Further, summary judgment is appropriate in regard to any allegations of "monopoly" claims by Skrmetta for the same reasons *and* because Skrmetta has failed to come forward with any specific facts to establish elements to prove a monopoly claim under Section 2 of the Sherman Act.

II. State Antitrust Violations

■ Federal jurisprudence regarding federal antitrust law provides persuasive interpretations for the state antitrust law. *Reppond v. City of Denham Springs*, 572 So.2d 224, 228, n. 2 (La.App. 1st Cir.1990), citing *Louisiana Power & Light v. United*

---

6. In *Eastman Kodak* the Supreme Court found that Kodak's control of nearly 100% of the parts market and 80% to 95% of the service market, "with no readily available substitutes, [was], however, sufficient to survive summary judgment under the more stringent monopoly standard of Section 2." *Id.* at 481, 112 S.Ct. at 2090. Further, one brand of product can constitute a separate market. *Id.* at 481–83, 112 S.Ct. at 2090.

*Gas Pipe Line,* 493 So.2d 1149 (La.1986). Therefore, to the extent that summary judgment is appropriate on federal antitrust allegations, as set forth above, Skrmetta's claims of state antitrust violations also succumb to summary judgment.

### III. Lanham Act Violations

Laitram also seeks summary judgment on its alleged violations of the Lanham Act through its alleged false and misleading representations regarding the qualities and attributes of its machines. The Lanham Act prohibits "false or misleading description of fact, or false or misleading representation of fact, which ... in commercial advertising or promotion, misrepresents the nature, characteristics [or] qualities ... of goods...." 15 U.S.C. Section 1125(a)(1)(B).

 The Fifth Circuit has established the necessary elements to establish a Lanham Act violation. There must be a false statement of fact about the product; the statement deceived or had the capacity to deceive a substantial segment of potential customers; the deception is material, *i.e.,* it is likely to influence the purchasing decision; the alleged deceiver must have put the products into interstate commerce; and the complainant has been or is likely to be injured as a result. *Taquino v. Teledyne Monarch Rubber,* 893 F.2d 1488, 1500 (5th Cir.1990).

 The first issue as to the Lanham Act allegations revolves around whether certain statements made by Laitram to the effect that Laitram's cooking machines operate in a "pure steam environment" constitute such material, deceptive, false statements. (Paragraph 64 of Skrmetta's counterclaim, R.Doc. 70.) Laitram argues that no reasonable consumer would have relied on these statements as factual claims or, alternatively, that any such claims are simply sales "puffing" that do not constitute Lanham Act violations.

In *Cook, Perkiss & Liehe, Inc. v. Northern California Collection Service, Inc.,* 911 F.2d 242, 246 (9th Cir.1990), the Ninth Circuit Court of Appeals stated that the common theme as to "puffery" is "that consumer reliance will be induced by specific rather than general assertions." The court of appeals found that advertising in general terms that one's products are superior over another's is not actionable, but "misdescriptions of specific or absolute characteristics ... are actionable." *Id.,* quoting *Stiffel Co. v. Westwood Lighting Group,* 658 F.Supp. 1103, 1115 (D.N.J.1987).

Skrmetta contends that Laitram's statements are deceptive, and materially so, because it is scientifically impossible for Laitram's machines to operate in a "pure steam environment." Further, such a statement does not qualify as "puffery," as that term is defined by the Ninth Circuit. Skrmetta supports its contention through its expert, Dr. Ramu M. Rao and his report (Exh. B to Skrmetta's opposition, R.Doc. 229.) In view of Dr. Rao's report, the Court finds that there is a genuine ·issue of fact on the Lanham Act and unfair trade practices issues necessitating a jury determination of the issues. *Anderson, supra.*

 The second issue is whether alleged statements by Laitram that its machines have new and improved elements features that make its machines superior is actionable. (Paragraphs 66–67, Skrmetta counterclaim.) Such statements certainly constitute puffery, and Laitram is entitled to summary judgment on this issue.

The third issue is whether Laitram's claims to its customers that its machines are properly patented is puffery or specific. (Paragraph 67, Skrmetta counterclaim.) As will be seen, for the same reasons that summary judgment should be denied on the issue of patent infringement, summary judgment should be denied on this issue.

 The fourth and final issue in regard to the Lanham Act claims is whether Laitram's alleged statements to parties outside of the United States that Laitram is suing Skrmetta for patent infringement are actionable. Putting aside whether or not Laitram made such statements, the question is whether the Lanham Act applies to alleged violations that occur outside of the United States. The Lanham Act requires that goods be put into commerce. 15 U.S.C. Section 1125(a). The act defines "commerce" as "all commerce which may lawfully be regulated by

Congress." 15 U.S.C. Section 1127. While not as crystal-clear as the Robinson–Patman Act, the Court finds that the language of the Lanham Act itself provides that alleged misrepresentations made outside of the United States "commerce" are not actionable.[7] Therefore, Laitram is entitled to summary judgment on this issue also.

## IV. Declaratory Judgment

In its counterclaim, Skrmetta has sought declaratory judgment of invalidity, unenforceability and non-infringement of the '794 patent, reissued as the '646 patent. Skrmetta has claimed that the '794 patent is unenforceable because Laitram employees and its parent corporation breached their duty of candor to the U.S. Patent and Trademark Office by failing to inform it of the a similar design of a shrimp cooker, which for literary ease will be termed the "Ellis–Brown invention." Skrmetta also contends that the patent application contained false statements and misrepresentations to the effect that the '794 patent cooked in a pure steam environment. (Paragraphs 43 and 44, Skrmetta counterclaim, R.Doc. 70.)

Laitram argues that it is entitled to summary on this claim on the basis that the evidence shows there was no inequitable conduct involving alleged omissions or misrepresentations to the Patent Office. Specifically, Laitram contends that there was no alleged omission in regard to another invention similar to that of the '794 patent, called the "Ellis–Brown invention." Further, Laitram did not misrepresent that its '794 patent provides for a cooking machine that cooks shrimp in a "pure steam environment." A party alleging inequitable conduct must prove its case by clear and convincing evidence, not by a preponderance of the evidence. *Scripps Clinic & Research Foundation v. Genentech, Inc.,* 927 F.2d 1565, 1583 (Fed.Cir.1991).

Laitram contends that, in addition to the fact that a patent for the Ellis–Brown invention was issued *after* the '794 patent, the applicable law provides that a patent applicant is not under any obligation to disclose all pertinent prior art or information of which he is aware. *American Hoist & Derrick Co. v. Sowa & Sons,* 725 F.2d 1350, 1362 (Fed. Cir.1984).

In opposition, Skrmetta argues that reports from its experts, Drs. Michael Carbo and Rao, as well as the depositions of two of Laitram's employees provide genuine issues of material fact that preclude summary judgment on the issue of lack of candor. Although neither the expert reports nor the opposition of Skrmetta specifically points to the source for these genuine issues, the expert reports certainly seem to provide that basis. Moreover, Fed.R.Civ.P. 56(e) can be read to mean that summary judgment may not be appropriate in complicated issues such as this one despite the failure of one party to present material in opposition to summary judgment. 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure: Civil 2d,* § 2739 at 528.

According to Dr. Carbo's report, Laitram knew about the Ellis–Brown invention when it filed for its patent for the '794 patent. Additionally, when it applied for the reissue application in 1991, after the Ellis–Brown invention had been patented, Laitram recognized the Ellis–Brown invention but submitted an affidavit that stated that Laitram cooker was completed before the filing date for the patent for the Ellis–Brown invention. "[I]t appears that Laitram was attempting to 'launder' its '794 patent which was probably unenforceable due to Laitram's failure to disclose the Ellis–Brown technology, which was clearly highly material." (Report of Dr. Carbo, p. 4, attached as Exh. D1 to Skrmetta's memorandum in opposition, R.Doc. 229.)

According to Dr. Carbo, 37 C.F.R. Section 1.56 sets out the duty of candor imposed on the patent applicant to disclose material information, which is information that has a "substantial likelihood that a reasonable examiner would consider ... important in deciding whether to allow the application to issue as a patent." *Id.*

In light of Dr. Carbo's report and the complicated nature of the declaratory judgment issues, summary judgment should be

7. Again, Skrmetta does not offer any argument in opposition to this issue.

denied, even though Skrmetta may have an uphill battle proving its allegations under the standard of clear and convincing evidence.

As to the issue of the machine's being able to cook in a pure stream environment, as noted in the previous discussion of the Lanham Act allegations, Dr. Rao has stated that this is scientifically impossible. Thus, there also appears to be a genuine issue of material fact on this issue on the declaratory judgment count.

Laitram contends that the context in which the "pure steam environment" language is used in the patent application, i.e., the cooking is performed in "substantially a pure steam environment," calls for summary judgment, especially because an inventor may be presumed to be his own lexicographer when describing his invention. *Autogiro Company of America v. U.S.*, 384 F.2d 391, 397 (Ct.Cl. 1967). Further, Laitram contends, a patent examiner is presumed to have interpreted the language in the patent application such that the machine was operable, for the examiner is presumed to have done his job properly. *American Hoist*, 725 F.2d at 1359–60.

However, the issue boils down to what the term "substantially" means, and whether or not that is a jury issue. In light of the scientific principles involved and the complicated nature of the issue, the Court finds that summary judgment is inappropriate.

Laitram finally argues with respect to non-infringement that Skrmetta's Multi–Zone Steam Cooker actually is a copy of Laitram's '646 reissue patent in violation of 35 U.S.C. Section 271(f), which prohibits infringement by the export and combination of a patented machine if such an action would be an infringement in the United States. Laitram is trying to defeat the claim of non-infringement by showing infringement on the part of Skrmetta.

■ However, in view of the recent Order by the United States Court of Appeals for the Federal Circuit that leave should be granted to Laitram to file a claim of infringement, the Court declines to address this issue as premature at this time pending further discovery, if any, by the parties.[8]

## V. Abuse of Process Claim

■ Finally, Laitram seeks summary judgment on the abuse of process claim made by Skrmetta. To establish an abuse of process under Louisiana law,[9] a party must show existence of an ulterior purpose and a willful act in the use of process not in the regular prosecution of a proceeding. *Duboue v. City of New Orleans*, 909 F.2d 129, 132 (5th Cir. 1990). "The precise inquiry involves the misuse of a process legally issued whereby a party attempts to obtain some result not proper under the law." *Id.* Further, the tort of abuse of process "involves the malicious use of a legal process *after* the process has been instituted." *Id.* (Emphasis added.)

■ In *Duboue* the court of appeals reversed a jury award of $25,000 for abuse of process against a police officer because, although he instituted the process whereby the plaintiff had been arrested, he did nothing further in carrying the process toward its conclusion. *Id.* "Therefore, Officer Logan can not be said to have abused the process *after* its institution." *Id.*

Skrmetta's abuse of process claim is based on Laitram's alleged improper joinder of

---

8. Even so, the Court finds that on the record before it, genuine issues of material fact exist as to whether the Skrmetta cooker is a copy of the '646 patent. Laitram relies on documents produced at the deposition testimony of Raphael Skrmetta to the effect that the Skrmetta machine "looks and works like" the Laitram machine (Exh. N, Laitram's memorandum in support, R.Doc. 221) and is identical in length to the Laitram machine. (Exh. O, R.Doc. 221.) However, Exh. N also lists two differences, the first being in the number of steam boxes below and above the cooking shrimp (three in the Skrmetta machine versus two in the Laitram machine) and access for cleaning of the machine. Similarly,

Exh. O talks about differences between the machines. This establishes genuine issues of material fact as to whether the Skrmetta machine is different from the Laitram machine.

Additionally, Skrmetta's answer to Laitram's Interrogatory No. 14 specifically lists differences in the machines. (Exh. F to Skrmetta's memorandum in opposition, R.Doc. 229.) This rebuts the deposition testimony in the form of tables in Laitram's.

9. This claim is made under the Court's supplemental jurisdiction. 28 U.S.C. § 3667.

Skrmetta as a defendant in a case against other defendants "as an artifice to establish this court as the forum for the instant lawsuit." (Paragraph 80, Skrmetta counterclaim, R.Doc. 70.) Skrmetta also alleges that Laitram brought this lawsuit for the ulterior purpose of causing injury to conduct business and compete. *Id.*, Paragraph 81. Skrmetta makes these same arguments in its opposition to the motion for summary judgment. (Skrmetta's memorandum in opposition, pp. 31–32, R.Doc. 229.)

Because Skrmetta's abuse of process claim involves Laitram's institution of the lawsuit and not anything done by Skrmetta *after* the lawsuit was instituted, Laitram is entitled to summary judgment as a matter of law on the abuse of process claim under *Duboue*.[10]

### VI. Conclusion

Laitram is entitled to summary judgment on alleged violations of the Robinson–Patman Act. Laitram also is entitled to summary judgment on claims of predatory pricing and antitrust violations for purchase of Skrmetta machinery. There also is no antitrust injury in regard to this latter issue. Summary judgment is also appropriate as to any claims of violation of Section 2 of the Sherman Act. Because Louisiana law antitrust law follows federal antitrust law, Laitram is granted summary judgment to the extent that summary judgment is proper on the federal antitrust claims. Finally, Laitram is entitled to summary judgment on the Skrmetta claims of abuse of process. In all other respects, however, Laitram's motion for summary judgment should be denied.

Accordingly,

**IT IS ORDERED** that "Plaintiff's Second Motion for Summary Judgment" filed by Laitram Machinery, Inc., BE and is **HEREBY GRANTED IN PART** and **DENIED IN PART.**

---

**10.** Both parties argue whether Laitram had an ulterior purpose in bringing this suit and whether this constituted abuse of process. However, the case cited by Laitram involving motive, *Wil-* *con, Inc. v. The Travelers Indemnity Co.*, 654 F.2d 976, 983 (5th Cir.1981), is inapposite for it concerns an abuse of process claim under Mississippi law, not under Louisiana law.