DUHÉ, Circuit Judge:
Plaintiff-Appellant Anago, Inc. seeks review of the district court’s denial of its request for a preliminary injunction under section 16 of the Clayton Act, 15 U.S.C. § 26, 792 F.Supp. 514. Because we find that Anago has failed to allege an antitrust injury, we affirm.
BACKGROUND
For the purposes of this appeal, the facts are undisputed. Anago and Tecnol both make disposable hospital supplies. Both companies service American hospitals, and, together, share a large percentage of the market for their products. Anago, which is smaller than Tecnol and privately held, is known as a price maverick. Tecnol is publicly held.
In 1991, Tecnol began efforts to buy Anago, and eventually succeeded in purchasing all of Anago’s preferred stock. After reaching agreements to purchase the common stock of several Anago shareholders, Tecnol publicly proposed a friendly merger. Anago immediately sued Tecnol for violations of the Williams Act, and moved for a preliminary injunction under the Clayton Act, 15 U.S.C.A. § 26 (Supp. 1992). The district court denied both of these claims. Anago now appeals the preliminary injunction ruling.
ANALYSIS
A plaintiff may seek either damages or injunctive relief for violations of the Clayton Act. 15 U.S.C.A. §§ 15, 26. It must, however, prove that it has or will suffer an antitrust injury. Cargill, Inc. v. Monfort of Colorado, Inc., 479 U.S. 104, 113, 107 S.Ct. 484, 491, 93 L.Ed.2d 427 (1986) (request for injunctive relief); Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc., 429 U.S. 477, 489, 97 S.Ct. 690, 697, 50 L.Ed.2d 701 (1977) (request for damages). The sole issue we face in this appeal is whether Anago, a target company, has alleged an antitrust injury.
The Supreme Court has defined antitrust injury as an injury “ ‘of the type the antitrust laws were intended to prevent and that flows from that which makes defendants’ acts unlawful.’ ” Cargill, 479 U.S. at 109, 107 S.Ct. at 489 (quoting Brunswick, 429 U.S. at 489, 97 S.Ct. at 697). As the Court explained in Brunswick, “The injury should reflect the anticompetitive effect either of the violation or of the anti-competitive acts made possible by the violation.” Brunswick, 429 U.S. at 489, 97 S.Ct. at 697. Typical anticompetitive effects include increased prices and decreased output. This circuit has narrowly interpreted the meaning of antitrust injury, excluding from it the threat of decreased competition. Phototron Corp. v. Eastman Kodak Co., 842 F.2d 95,100 (5th Cir.), cert. denied, 486 U.S. 1023, 108 S.Ct. 1996, 100 L.Ed.2d 228 (1988).
Before Cargill was announced, courts often granted target companies injunctions in the face of antitrust violations, assuming that in the absence of an antitrust injury requirement similar to that announced in Brunswick for suits for damages, targets had standing to sue for equitable relief. See Laidlaw Acquisition Corp. v. Mayflower Group, Inc., 636 F.Supp. 1513, 1516-17 (S.D.Ind.1986); Gearhart Indus., Inc. v. Smith Internad, Inc., 592 F.Supp. *250 203, 211 n. 1 (N.D.Tex.) aff'd in part, modified in part, and vacated in part, 741 F.2d 707 (5th Cir.1984); cf. Grumman Corp. v. LTV Corp., 665 F.2d 10, 16 (2nd Cir.1981) (no consideration of Brunswick; standing based on target’s right to preserve separate existence as a competitor); Whittaker Corp. v. Edgar, 535 F.Supp. 933, 950 (N.D.Ill.1982) (relying on Grumman ). Other courts, requiring a showing of antitrust injury, found that targets lacked standing to sue for injunctive relief. See Central Nat’l Bank v. Rainbolt, 720 F.2d 1183, 1186-87 (10th Cir.1983); ADM Corp. v. Sigma Instruments, Inc., 628 F.2d 753 (1st Cir.1980); Carter Hawley Hale Stores, Inc. v. Limited, Inc., 587 F.Supp. 246, 250 (C.D.Cal.1984); see also, 50 Antitrust Trade & Reg. Rep. (BNA) 318 (Mar. 1986) (discussing the Third Circuit’s similar ruling in H.H. Robertson Co. v. Guardian Indus. Corp., 50 Antitrust & Trade Reg. Rep. (BNA) 166 (3rd Cir. Jan. 9, 1986), vacated pending review en banc, 1986-2 Trade Cas. (CCH) II66, 911 (3rd Cir. Feb. 12, 1986)).
In light of Cargill’s explicit antitrust injury requirement some courts have grown reluctant to grant injunctions to target companies. See Burnup & Sims, Inc. v. Posner, 688 F.Supp. 1532, 1534 (S.D.Fla.1988); Burlington Indus. Inc. v. Edelman, 666 F.Supp. 799, 805-06 (M.D.N.C.1987). The Second Circuit, in contrast, has not changed its position since the Supreme Court’s decision. Consolidated Gold Fields P.L.C. v. Minorco, S.A., 871 F.2d 252 (2nd Cir.1989), cert. dismissed, 492 U.S. 939, 110 S.Ct. 29, 106 L.Ed.2d 639 (1989).
In Gold Fields, the Second Circuit addressed a situation almost identical to the case at hand. There, a target company, among others, sued to enjoin a takeover attempt. The target alleged that the takeover would destroy its ability to compete independently in the market. The Second Circuit reversed the district court’s denial of the preliminary injunction. It reasoned:
Surely Gold Fields’ loss of independence is causally related to the injury occurring in the market place, where acquisition threatens to diminish competitive forces_ It is hard to imagine an injury to competition more clearly “of the type the antitrust laws were intended to prevent,” than the elimination of a major competitor’s power to determine its prices and output.
Id. at 258 (citation omitted).
Anago offered evidence that a takeover will dramatically decrease competition and raise prices in the American market. Ana-go also offered proof that it will lose its power of independent decision making should Tecnol buy its operations. Relying on Gold Fields, it argues that this showing is sufficient to establish an antitrust injury. If we were inclined to follow Gold Fields, we would agree. We prefer, however, to adhere to the line of cases predating Car-gill that require antitrust injury, see, e.g., Carter Hawley Hale Stores, Inc. v. Limited, Inc., 587 F.Supp. 246, 250 (C.D.Cal.1984), and those cases postdating Cargill that narrowly interpret the meaning of antitrust injury. See, e.g., Burlington Indus. Inc. v. Edelman, 666 F.Supp. 799, 805-06 (M.D.N.C.1987).[2]
First, we are concerned that the Second Circuit’s emphasis on a causal relationship between the loss of independence and the alleged antitrust violation does not comport with Supreme Court precedent. As the Court has stated, a plaintiff “must prove more than injury causally linked to an illegal presence in the market.” Brunswick, 429 U.S. at 489, 97 S.Ct. at 697.
Second, we are not convinced, as is the Second Circuit, that the loss of independent *251 decision making is the type of injury meant to be prevented by the antitrust laws. As we have stated, this court narrowly construes the meaning of antitrust injury. Phototron, 842 F.2d at 100-01. Although Phototron examined the suit of a competitor rather than a target company, the difference does not affect the scrutiny with which we must examine alleged injuries. A target may suffer injuries different from a competitor, but both must show that their injuries coincided “with the public detriment tending to result from the alleged violation.” Gold Fields, 871 F.2d at 264 (Altimari, J., dissenting) (quoting P. Areeda & H. Hovenkamp, Antitrust Law ¶ 834.2b, at 305 (Supp.1988)).
This is not the first time that this Circuit’s views on antitrust law have differed from the Second Circuit’s. In R.C. Bigelow, Inc. v. Unilever N.V., 867 F.2d 102 (2nd Cir.), cert. denied, 493 U.S. 815, 110 S.Ct. 64, 107 L.Ed.2d 31 (1989), the Second Circuit declined to follow Phototron to the extent that it “requires proof of antitrust injury on an application for a preliminary injunction_” Id. at 109. Thus, the Second Circuit generally takes a lenient stance with regard to the showings necessary to obtain a preliminary injunction.
Proof that a plaintiff will be adversely affected by the merger itself will not suffice in this Court, unless the injuries are related to the anticompetitive effects of the merger. Although Anago presented evidence that the merger will have anticom-petitive effects, such as higher prices and decreased competition, it did not show that either of these effects will cause its injury. In fact, Anago will suffer a loss of independence whether or not its takeover violates antitrust principles. Moreover, once the takeover is complete, Anago and its shareholders are likely to benefit from any increased prices or decreased competition that might result. See Carter Hawley, 587 F.Supp. at 250.
Because Anago’s alleged injury is not “of the type the antitrust laws were intended to prevent,” the order of the district court denying Anago’s request for injunction relief is AFFIRMED.

. Anago cites one post-Cargill district court case from this circuit in which the court denied the defendant’s motion to dismiss, for lack of standing, a target’s request for a preliminary injunction for alleged antitrust violations. Copeland Enterprises, Inc. v. Guste, 1988 WL 129318, 1989-2 (CCH) ¶ 68,712 (E.D.La.1988). The court ultimately denied the injunction. On appeal, the defendant again asserted the standing argument. This court affirmed summarily, without written opinion. It is unclear, therefore, whether the panel accepted the defendant’s standing argument or agreed with the district court on the merits of the case. Church’s v. Copeland, 865 F.2d 1264 (5th Cir.1989). Consequently, we find very little guidance in the case.