DOCTOR'S HOSPITAL OF
JEFFERSON, INC.

v.

SOUTHEAST MEDICAL ALLIANCE,
INC. and Jefferson Parish Hospital
Service District No. 2.

Civ. A. No. 93–2493.

United States District Court,
E.D. Louisiana.

Aug. 21, 1995.

Gene W. Lafitte, Sr., Frank E. Massengale, Marie Breaux, Shannon Skelton Holtzman, Liskow & Lewis, New Orleans, LA, for plaintiff.

Peter Joseph Butler, Donna DiMartino Fraiche, Aubrey B. Hirsch, Jr., Peter J. Butler, Jr., Richard G. Passler, Locke, Purnell, Rain & Harrell, P.C., Michael M. Meunier, Sullivan, Stolier & Daigle, Danielle Lombardo Trostorff, Locke, Purnell, Rain & Harrell, P.C., New Orleans, LA, for Southeast Medical Alliance, Inc.

Harry Simms Hardin, III, Howard Earl Sinor, Jr., Katy Kimbell Theriot, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, LA, Lucas Joseph Giordano, East Jefferson General Hospital, General Counsel, Metairie, LA, for Jefferson Parish Hospital Service District No. 2.

## ORDER AND REASONS

JONES, District Judge.

Pending before the Court is plaintiff's "Motion for Reconsideration, or, Alternatively for Entry of Final Judgment Under Rule 54(b)," which was taken under submission on a previous date without oral argument. Having considered the memoranda of the parties, the record and the applicable law, the Court GRANTS the motion to the extent that the Court clarifies the basis for its original ruling but REAFFIRMS the grant of partial summary judgment in defendants' favor. Further, the Court DEFERS ruling on plaintiff's request for entry of judgment pursuant to Fed.R.Civ.P. 54(b).

### Background

The background of this matter is set forth at length in an "Order and Reasons" dated April 18, 1995, in which the Court granted partial summary judgment in favor of defendants on plaintiff's federal and state antitrust claims. (R.Doc. 282.) Without repeating the factual situation at length, suffice it to say that plaintiff, Doctor's Hospital of Jefferson, Inc., sued defendants, Southeast Medical Alliance, Inc. (hereinafter "SMA") and Jefferson Parish Hospital District No. 2 (hereinafter "East Jefferson Hospital"), alleging violations of Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2; Louisiana antitrust laws, LSA–R.S. 51:122 et seq.; the Louisiana Unfair Trade Practices and Consumer Protection Act, LSA–R.S. 51:1401 et seq.; and various other state-law based claims, including civil conspiracy, tortious interference with business relations, and breach of contract. Suit was brought pursuant to Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15, 26.

The defendants filed a motion for partial summary judgment, which was based partly on the contention that the plaintiff, Doctor's Hospital of Jefferson, Inc. (hereinafter "Doctor's Hospital"), had no standing to proceed because it could not prove that there had been any "antitrust injury." ("Order and Reasons," p. 4, R.Doc. 282. See Defendants' memorandum in support of motion for partial summary judgment, p. 8–24, R.Doc. 247.) The Court agreed with defendants while at the same time rejecting plaintiff's arguments in opposition. (R.Doc. 282.)

Doctor's Hospital seeks reconsideration of the Court's decision, or, alternatively, for entry of judgment pursuant to Fed.R.Civ.P. 54(b) on the Court's ruling. In its 95–page memorandum in support, Doctor's Hospital argues that the Court committed legal error in numerous ways in granting partial summary judgment. The legal error included:

1) misapplication of the summary judgment standard;

2) misapplication of the requirement of "standing" under antitrust law;

3) improper analysis of its § 2 Sherman Act claim;

4) improper rejection of its argument for applicability of the per se rule of antitrust law; and,

5) improper analysis of its prima facie showing of injury to competition under the "rule of reason" analysis.

In opposition, defendants argue that the Court correctly applied the law to the record in finding that defendants' failed to establish "antitrust standing" because there was no proof of "antitrust injury." Defendants alternatively address plaintiff's other contentions. Finally, as to plaintiff's request for entry of judgment pursuant to Rule 54(b), defendants contend that such entry is premature and/or would be improper.

### Law and Application

#### I. Reconsideration

In addition to providing the standard for entry of partial judgments, Rule 54(b) also sets forth the standard by which the Court may reconsider its grant of partial summary judgment in defendants' favor. The rule states, in pertinent part, that "any order ... which adjudicates fewer than all the claims ... is subject to revision at any time before entry of judgment adjudicating all the claims...." Cf. Zimzores v. Veterans Administration, 778 F.2d 264, 266 (5th Cir. 1985) (analogizing Rule 54(b) provision on revision to entry of summary judgment on liability alone under Rule 56(c)).

Clearly, the Court has the power to revise its previous order. However, for the following reasons, the Court declines to exercise its discretion to change or vacate the grant of partial summary judgment.

## II. Summary Judgment Standard

Plaintiff's initial argument is that the Court misapplied summary judgment standards. First, plaintiff argues that the Court did not apply the standard "cautiously" as required in an antitrust case. Second, defendant contends that the Court improperly decided issues of motive and intent central to Doctor's Hospital's claims.

Doctor's Hospital is correct that the Supreme Court stated in *Poller v. CBS,* 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962), that "summary (judgment) procedures should be used sparingly in complex antitrust litigation where motive and intent play leading roles, the proof is largely in the hands of alleged conspirators, and hostile witnesses thicken the plot." However, as the Fifth Circuit recognized in discussing *Poller* and finding the foregoing statement to be *Obiter dictum,* "simply because a case is based upon the antitrust laws does not suspend the application of Rule 56." *Aladdin Oil Company v. Texaco, Inc.,* 603 F.2d 1107, 1111 (5th Cir.1979). *Cf. Little v. Liquid Air Corporation,* 37 F.3d 1069, 1075, n. 14 (5th Cir.1994) (*en banc*) (rejecting any notion that "appropriateness of summary judgment can be determined" by case classification).

Thus, *where* motive and intent play important roles in determination of factual issues, summary judgment may be inappropriate in antitrust cases. However, where—as here—the Court's determination of summary judgment was based on the legal issue of "antitrust injury" as part of "antitrust standing" and on plaintiff's expert's recitation of that "antitrust injury," the use summary judgment was clearly appropriate.

Further, as the Court will explain, because the Court did not have to reach the specific elements of the claims under §§ 1 or 2 of the Sherman Act, the Court did not improperly construe any inferences of motive and intent in favor of defendants.

## III. "Antitrust Injury" Necessary for Antitrust Standing

Doctor's Hospital next argues that the Court confused "antitrust injury" as an element of standing with "injury to competition" as one of the elements of a Sherman Act offense. As a result, plaintiff maintains that the Court improperly mixed a question of law—"antitrust injury"—with a question of fact—injury to competition. Upon review of the earlier decision, the Court agrees that the manner in which the Court addressed "antitrust injury" as an element of standing was confusing. Therefore, the Court clarifies its ruling as follows.

In the "Order and Reasons," the Court noted defendants' contention that plaintiff did not have antitrust standing. ("Order and Reasons," p. 4, R.Doc. 282.) The Court then correctly framed the threshold legal standard for antitrust standing, *i.e.,* in an antitrust case, "a private plaintiff must prove that it has suffered or will suffer an 'antitrust injury,'" citing *Anago, Inc. v. Tecnol Medical Products, Inc.,* 976 F.2d 248, 249 (5th Cir. 1992), *citing Cargill, Inc. v. Monfort of Colorado, Inc.,* 479 U.S. 104, 113, 107 S.Ct. 484, 491, 93 L.Ed.2d 427 (1986). ("Order and Reasons," pp. 5–6, R.Doc. 82.) For the purposes of standing, "antitrust injury" is "of the type that flows from that which makes defendants' acts unlawful." *Id.* at 109, 107 S.Ct. at 489, *quoting Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.,* 429 U.S. 477, 489, 97 S.Ct. 690, 697, 50 L.Ed.2d 701 (1977). Whether a plaintiff seeks damages or injunctive relief, as Doctor's Hospital does here, the plaintiff must prove antitrust injury. *Cargill,* 479 U.S. at 113, 107 S.Ct. at 491. Neither does it matter whether the plaintiff makes a claim under § 1 or § 2 of the Sherman Act; antitrust injury must still be established. *See Blue Shield of Virginia v. McCready,* 457 U.S. 465, 102 S.Ct. 2540, 73 L.Ed.2d 149 (1982) (applying *Brunswick* "antitrust injury" requirement to § 1 claim); *T.O. Bell v. Dow Chemical Company,* 847 F.2d 1179, 1182 and n. 4 (5th Cir.1988) ("antitrust injury" applicable to violations of § 2 of Sherman Act).

■ The question, then, is whether the injuries allegedly sustained by Doctor's Hospital are of the "type that the antitrust laws were intended to prevent." *Id.* at 1183, citing *Brunswick, supra.* "The court's focus must be upon competition in the allegedly restrained market. Restraint in the market affects consumers and competitors in the market; as such, they are the parties that have standing to sue." *Bell,* 847 F.2d at 1183, *citing Associated General Contractors v. Carpenters,* 459 U.S. 519, 539, 103 S.Ct. 897, 909, 74 L.Ed.2d 723 (1983).

As stated in the Court's earlier decision, the Fifth Circuit has described "[t]ypical anticompetitive effects [as] includ[ing] increased prices and decreased output." *Anago,* 976 F.2d at 249. The *Anago* court also "narrowly interpreted the meaning of antitrust injury, excluding from it the threat of decreased competition." *Id.*[1]

With these principles in mind, the Court turns to plaintiff's main contentions that "antitrust injury" exists, which are based on its expert report. Specifically, as noted in the Court's previous "Order and Reasons," Dr. Henry Zaretsky opined for Doctor's Hospital that antitrust injury occurred in three ways when Doctor's Hospital was terminated from SMA: consumers would pay more; consumers had less choice, and Doctor's Hospital was weakened as a competitor. (R.Doc. 82, p. 23.)[2]

Addressing this last contention first, the Court notes, as it did in its earlier ruling, that Doctor's Hospital concedes that injury to a single competitor does not constitute an "antitrust injury." (Plaintiff's reply memorandum, R.Doc. 276, p. 12, n. 8). *See, e.g., Green v. State Bar of Texas,* 27 F.3d 1083, 1087 (5th Cir.1994) ("Appellant may not just show that defendants' actions injured him but must also demonstrate that the defendants' actions unreasonably restrained competition").

In the previous ruling the Court also distinguished *Reazin v. Blue Cross and Blue Shield of Kansas,* 899 F.2d 951, 963 (10th Cir.1990), on which plaintiff relied for the proposition that "under appropriate circumstances," injury to a single competitor may be actionable. (R.Doc. 282, pp. 22–26.) The Court adopts its previous statements as to the inapplicability of *Reazin* as set forth in the prior decision and will not repeat it here. Simply put, *Reazin* is inapposite to the case at hand.

Doctor's Hospital also relies on Dr. Zaretsky's expert report for the proposition that the increase in consumer prices constitutes antitrust injury. However, as the Court recognized in its earlier ruling, Dr. Zaretsky's opinions hedge on whether prices will rise. For example, Dr. Zaretksy states that "studies suggest that the success of [East Jefferson] and SMA in eliminating [Doctor's Hospital] as a competitor is *likely* to lead to an increase in prices of all hospitals in the geographic market, not to mention prices paid by SMA members to its contracting hospitals." (Exh. 13, p. 24, R.Doc. 247, emphasis added.) Dr. Zaretsky also stated that "[b]y eliminating competition, the termination of [Doctor's Hospital] immediately harmed consumers by creating an environment *conducive to* increased prices." *Id.* at 23. These speculative statements about anticompetitive effects are insufficient to create antitrust injury under the narrow standard set forth by the Fifth Circuit in *Anago,* which requires more than mere "*threat*" of antitrust injury." *Anago,* 976 F.2d at 249 (emphasis added). As the Court stated previously, "the mere 'likelihood' that prices will increase or that an environment is 'conducive' to increased prices for inpatient and outpatient hospital care on the east bank of Jefferson [Parish] falls short of the strict Fifth Circuit standard for showing antitrust injury." ("Order and Reasons," p. 27, R.Doc. 282.)

---

1. Plaintiff attempts to distinguish *Anago* as factually inapposite because it is a merger case. (Plaintiff's memorandum in support, pp. 20–21, R.Doc. 290.) While *Anago* did involve a merger, its facts do not lessen the principle of law set forth therein.

2. In the instant motion, Doctor's Hospital offers no new contentions specifically as to "antitrust injury" in terms of standing other than new supporting evidence for its contention as to the effect on consumer choice. This new proof is discussed herein.

■ There is an additional reason why plaintiff's claims of increased price fail to establish standing. Doctor's Hospital alleges that East Jefferson insisted on a 10 percent price increase from SMA that was higher than that of other SMA entities. (R.Doc. 290, p. 6.) This argument fails to establish standing for the reasons set forth by the Supreme Court in *Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corporation*, 475 U.S. 574, 583, 106 S.Ct. 1348, 1354, 89 L.Ed.2d 538 (1976) as to actions that do not violate the Sherman Act:

Nor can respondents recover damages for any conspiracy by petitioners to charge higher than competitive prices.... Such conduct would indeed violate the Sherman Act, but it could not injure respondents: as petitioners' competitors, respondents stand to gain from any conspiracy to raise the market price.... Finally, for the same reasons, respondents cannot recover for a conspiracy to impose nonprice restraints that have the effect of ... raising market price.... Such restrictions, though harmful to competition, actually benefit competitors by making surpracompetitive pricing more attractive.

As the Fifth Circuit has noted, part of the requirement for antitrust standing is not only that the injury was "the type that antitrust laws were intended to prevent" but also that the injury was "a direct and determinable injury" to plaintiff. *Walker v. U–Haul Co. of Mississippi*, 747 F.2d 1011, 1014 (5th Cir. 1984). Assuming that the prices were increased by 10 percent, the Court finds that there was no injury of a direct and determinable nature to Doctor's Hospital. Although rates may have been increased, Doctor's Hospital would only stand to gain from this increase as set forth in *Matsushita*.

■ Finally, the Court turns to Dr. Zaretsky's third statement bearing on evidence of antitrust injury, *i.e.*, that consumers have less choice as a result of the exclusion of Doctor's Hospital from SMA. Specifically, Dr. Zaretsky believes that this exclusion reduces "the SMA subscribers' choices among providers (hospitals and some physicians). This reduces both price and nonprice competition." (Exh. 13, p. 25, R.Doc. 247.) How-

ever, as explained in the prior ruling, this only addresses "antitrust injury" in the SMA market, not in the allegedly restrained market as required under *Bell, supra*, which Dr. Zaretsky defined as the acute care inpatient services and hospital-based outpatient services on the east bank of Jefferson Parish. (Exh. 13, p. 14–15, R.Doc. 247.) Additionally, according to the deposition of the former chairman of Doctor's Hospital, nearly all of the doctors on staff at Doctor's Hospital are also on staff at East Jefferson. (Exh. 27, p. 23, R.Doc. 247.) Thus, as the Court stated in its earlier decision, there does not appear to be any reduction in physician choice.

In the prior ruling, the Court rejected plaintiff's argument that consumer choice was affected because consumers would choose Doctor's Hospital over East Jefferson because Doctor's Hospital was less bureaucratic, more efficient and more comfortable than East Jefferson. This was based on the lack of support provided in the form of affidavits, depositions or otherwise as required by Fed.R.Civ.P. 56(c). Doctor's Hospital now argues that this patient choice is supported by an affidavit and deposition testimony of Dr. Alvin S. Merlin. (Attachments to motion for reconsideration, Exhs. 4 and 8, respectively, R.Doc. 290.)

The Court first notes that Dr. Merlin's affidavit was executed *after* the Court's prior decision in this matter. This fact constitutes reason enough to disregard the affidavit, as Doctor's Hospital could have presented it to the Court earlier. *See Abbott v. The Equity Group*, 2 F.3d 613, 619 (5th Cir.1993) (court under no obligation to allow new legal theory to be presented following grant of summary judgment). Even considering the affidavit, however, the Court finds that it contains conclusory, self-supporting statements, which the Court finds does not constitute a genuine issue of material fact. As to the deposition testimony of Dr. Merlin, it refers to alleged problems at East Jefferson at the time Doctor's Hospital began, not at the time of SMA's termination of Doctor's Hospital's. There is no indication that the alleged problems existed at the time that SMA terminated Doctor's Hospital. Therefore, the deposi-

tion testimony of Dr. Merlin also does not raise a genuine issue of material fact.

In the instant motion, Doctor's Hospital also claims that it is entitled to standing as a matter of law under *Crimpers Promotions, Inc. v. Home Box Office, Inc.,* 724 F.2d 290, 294–97 (2nd Cir.1983), because it is alleging a concerted refusal to deal with Doctor's Hospital. However, in *Crimpers,* although the question before the Court of Appeals was whether plaintiff had standing, the defendants "concede[d] that their alleged activities were within the concern of Congress insofar as they adversely affected the producers or the stations." *Id.* at 294. Thus, "antitrust injury" at issue here and as refined by the cases cited above was not an issue in *Crimpers.* Quite obviously, there was no similar concession by defendants in this matter.

Therefore, for the foregoing reasons, the Court finds that Doctor's Hospital lacks standing to proceed with this matter due to an absence of "antitrust injury."

### IV. Section 2 "Monopolization" Claim

Doctor's Hospital also contends that this Court erred in dismissing its § 2 Sherman Act claim because the Court failed to analyze the various elements necessary to justify summary judgment on its claims of monopolization, attempted monopolization, and conspiracy to monopolize. Plaintiff also maintains that the Court failed to take into account East Jefferson's use of market power and the applicability of *Lorain Journal Co. v. United States,* 342 U.S. 143, 72 S.Ct. 181, 96 L.Ed. 162 (1951). As set forth above, however, an antitrust plaintiff must establish "antitrust injury" under both § 1 and § 2 claims. *See, e.g., Bell,* 847 F.2d at 1182 and n. 4. Therefore, because plaintiff has failed to establish antitrust injury here under either of his Sherman Act claims, the Court dismisses the § 2 claim without having to reach the substantive elements of its § 2 claim or the *Lorain Journal* argument.

### V. Analysis of § 1 Claim

Doctor's Hospital also contends that this Court undertook an improper analysis of its § 1 claim. The Court rejects this argument for two reasons. First, as set forth above,

Doctor's Hospital has failed to establish "antitrust injury" necessary to pursue its § 1 claim. Second, as explained herein, the Court properly found that this was not a case for the application of the *per se* rule of liability of antitrust law.

■ Doctor's Hospital argues that *Klor's, Inc. v. Broadway–Hale Stores, Inc.,* 359 U.S. 207, 79 S.Ct. 705, 3 L.Ed.2d 741 (1959) and its progeny control this matter as a group boycott, or concerted refusal to deal. Hence, plaintiff maintains that the *per se* rule is applicable.

The Court dismisses this argument for the same reason as set forth in the previous "Order and Reasons." In *Klor's* the Supreme Court clearly stated that a group boycott requires "a concerted refusal by traders to deal with traders." *Id.* at 212, 79 S.Ct. at 709. Here, there was only one entity— SMA—which terminated Doctor's Hospital. There must be a plurality of actors on the same market level who refuse to deal with another entity before there can be a *per se* violation of the antitrust laws under a group boycott. *See Seagood Trading Corp. v. Jerrico, Inc.,* 924 F.2d 1555, 1567–68 (11th Cir. 1991).

Further, the contention of Doctor's Hospital's that *Klor's* must be given a broad reading such that the present case falls within its ambit ignores Supreme Court recognition of *Klor's* as involving a horizontal combination. *Business Electronics Corporation v. Sharp Electronics Corporation,* 485 U.S. 717, 734, 108 S.Ct. 1515, 1525, 99 L.Ed.2d 808 (1988) (both *Klor's* and another Supreme Court case "involved horizontal combinations"). Plaintiff's argument also ignores the Supreme Court's admonition that *"per se* rules are appropriate only for 'conduct that is manifestly anticompetitive....'" *Id.* at 723, 108 S.Ct. at 1519. *See also FTC v. Indiana Federation of Dentists,* 476 U.S. 447, 458–59, 106 S.Ct. 2009, 2017–18, 90 L.Ed.2d 445 (1986) ("[W]e have been slow ... to extend *per se* analysis to restraints imposed in the context of business relationships where the economic impact of certain practices is not immediately obvious.")

Finally, the Court addresses plaintiff's reliance on two cases, *Six Twenty–Nine Productions, Inc. v. Rollins Telecasting, Inc.,* 365 F.2d 478 (5th Cir.1966) and *St. Bernard Hospital, Inc. v. Hospital Service Association of New Orleans, Inc.,* 712 F.2d 978 (5th Cir. 1983) for its argument that the *per se* rule of antitrust liability is applicable to this case.

In *Six Twenty–Nine Productions* it was alleged that a television station "engaged in a combination or conspiracy with another advertising agency for the purpose of eliminating plaintiff as a competitor in the field of advertising services." *Six Twenty–Nine Productions,* 365 F.2d at 484. The Fifth Circuit analyzed whether a cause of action was stated for a § 1 claim and found, based on *United States v. General Motors Corp.,* 384 U.S. 127, 86 S.Ct. 1321, 16 L.Ed.2d 415 (1966) that the complaint stated a cause of action. *Six Twenty–Nine Productions,* 365 F.2d at 484–85. However, the court of appeals analyzed *General Motors* and, implicitly, *Klor's,* on which the court of appeals stated *General Motors* relied, as vertical restraints of trade. *Six Twenty–Nine Productions,* 365 F.2d at 484. As noted, the Supreme Court has since stated that both *General Motors* and *Klor's* involved horizontal combinations. *Sharp Electronics Corporation,* 485 U.S. at 734, 108 S.Ct. at 1525. Because the Court has found that the instant case does not constitute a horizontal restraint of trade and because plaintiff does not claim that the present case involves a vertical restraint of trade, the Court finds *Six Twenty–Nine Productions* inapplicable.

There are two additional reasons why *Six Twenty–Nine Productions* is inapposite. First, the Court notes that the Fifth Circuit at the time of that decision did not have the benefit of later Supreme Court statements as to its hesitancy to impose the *per se* rule of liability in antitrust cases. *Id.* at 723, 108 S.Ct. at 1519; *FTC v. Indiana Federation of Dentists,* 476 U.S. at 458–59, 106 S.Ct. at 2017–18. Second, the Fifth Circuit did not specifically state in *Six Twenty–Nine Productions* that the *per se* rule should be applied to the facts of that case. The court of appeals only found that a cause of action existed under § 1 and that summary judg-

ment was inappropriate and remanded the case.

Turning to *St. Bernard Hospital,* the Court finds that this case also is inapplicable. First, the Court first notes that the Fifth Circuit had doubts whether the cause of action could be construed under the *per se* rules of antitrust liability because the allegations did "not assume a strictly horizontal restraint, but rather include a vertical link from supplier to customer." *St. Bernard Hospital,* 712 F.2d at 986. "These charges are not so clearly *per se* violations of antitrust laws." *Id.* Having made that statement, the Fifth Circuit refused to find that the factual scenario in *St. Bernard Hospital* required use of the *per se* rule but remanded the case for further consideration of the *"per se* charges." *Id.* at 987. Additionally, the allegation of *per se* liability in *St. Bernard Hospital* was based on price fixing, *id.,* an allegation not made by Doctor's Hospital in this case. Finally, in discussing various other alternative forms for relief, the court of appeals noted that the evidence might indicate a refusal to deal. *Id.* at 987–88. However, the court of appeals did not state that there was any less of a requirement for a plurality of traders at one level in considering whether the *per se* rule should be applied. *Id.* Finally, as noted, since the decision in *St. Bernard Hospital,* the Supreme Court has recognized the specific horizontal nature of cases such as *Klor's,* on which plaintiff relies for its contention that the present case requires imposition of a *per se* rule for refusal to deal. *Sharp Electronics Corporation,* 485 U.S. at 734, 108 S.Ct. at 1525.

Therefore, for the foregoing reasons, the Court reaffirms its earlier decision that this case is not one where *per se* rules of illegality under the Sherman Act should be applied.

## VI. Rule of Reason Analysis

Doctor's Hospital contends that the Court committed numerous errors in its analysis of plaintiff's claims under the rule of reason. However, in view of the Court's findings set forth above as to plaintiff's lack of antitrust standing, the Court recalls Section IV of its previous "Order and Reasons" except as spe-

cifically adopted above and except as to its discussion of *Oltz v. St. Peter's Community Hospital*, 861 F.2d 1440 (9th Cir.1988). ("Order and Reasons," pp. 28–29, R.Doc. 282.)

## VIII. Request for 54(b) Judgment

Rule 54(b) of the Federal Rules of Civil Procedure provides, in pertinent part, "the court may direct the entry of a final judgment as to one or more but fewer than all of the claims ... upon only upon an express determination that there is no just reason for delay and upon express direction for entry of judgment." The decision whether to enter a "54(b) judgment" is within the discretion of the Court. *H & W Industries v. Formosa Plastics Corp.*, 860 F.2d 172, 175 (5th Cir. 1988). The policy underlying Rule 54(b) is to prohibit "piecemeal appeals" except in limited circumstances. *Road Sprinkler Fitters v. Continental Sprinkler*, 967 F.2d 145, 148 (5th Cir.1992).

Although through its prior order and this ruling the Court dismisses plaintiff's federal and state antitrust claims, there still remain other claims based upon state law. The defendants have filed motions for summary judgment on those claims, which are set for hearing in the near future.

Therefore, pending a ruling on those motions, the Court defers ruling on plaintiff's request for entry of a judgment pursuant to Rule 54(b). Should defendants be successful on those motions, then a judgment will be entered in the entire matter. Should plaintiff prevail on those motions, the Court will consider whether to enter judgment pursuant to Rule 54(b) at that time. This decision is in accord with the policy against "piecemeal appeals" and follows the most judicially efficient path.

Accordingly,

IT IS ORDERED that plaintiff's motion for reconsideration is GRANTED insofar as the Court clarifies its earlier ruling.

IT IS FURTHER ORDERED that, in accord with the foregoing, partial summary judgment is GRANTED in favor of defendants' as to plaintiff's antitrust claims under federal and state law.

IT IS FURTHER ORDERED that the Court's prior "Order and Reasons" dated April 18, 1995, be AMENDED AND MODIFIED in accord with the foregoing.

IT IS FURTHER ORDERED that plaintiff's motion for entry of judgment pursuant to Fed.R.Civ.P. 54(b) is DEFERRED pending ruling on defendants' remaining motions for summary judgment.