**T & T GEOTECHNICAL, INC., et al., Plaintiffs,**

v.

**UNION PACIFIC RESOURCES COMPANY, Defendant.**

No. 4:95–CV–644–A.

United States District Court, N.D. Texas, Fort Worth Division.

July 31, 1996.

Melvin Albert Hunn, Mark Douglas Perdue, Duke Wieder Yee, Felsman Bradley Gunter & Dillon, Fort Worth, TX, Joby Allen Hughes, Law Office of Joby A. Hughes, Houston, TX, for T & T Geotechnical, Inc.

Duke Wieder Yee, Felsman Bradley Gunter & Dillon, Fort Worth, TX, Joby Allen Hughes, Law Office of Joby A. Hughes, Houston, TX, for Timothy C. Dean, Terry L. Norris.

Walter Andrew Herring, Fulbright & Jaworski, Dallas, TX, Ronald G. Bliss, William Robert Pakalka, Paul L. DeVerter, II, John Mason Mings, IV, Fulbright & Jaworski, Houston, TX, for Union Pacific Resources Company.

## MEMORANDUM OPINION AND ORDER

McBRYDE, District Judge.

Came on for consideration the motion of defendant, Union Pacific Resources Company ("UPRC"), for partial summary judgment, and the motions of plaintiffs, T & T Geotechnical, Inc., ("T & T"), Timothy C. Dean ("Dean"), and Terry L. Norris ("Norris"), for partial summary judgment.

## I.

### The Dispute

This action involves a dispute over certain technology used in drilling oil and gas wells.

On May 17, 1994, United States Patent No. 5,311,951 (hereinafter "the '951 patent") entitled "Method of Maintaining a Borehole in a Stratigraphic Zone During Drilling" was issued to defendant. Defendant has sent letters to certain entities stating that it is has not offered, and has no plans to offer, the technology under the '951 patent for sale or license. Plaintiff is being accused by defendant of infringing the '951 patent. Defendant also has alleged that it maintained proprietary and confidential information relating to reservoir characterization, borehole data, logging, interpretation, and manipulation to aid in the geosteering of oil and gas wells, that Dean and Norris were privy to such information while employees of defendant, that Dean and Norris agreed in writing not to disclose such information, and that plaintiffs have unlawfully misappropriated, converted, or disclosed such information. Defendant has asserted an action against plaintiffs in the Southern District of Texas claiming theft of trade secrets.

In this action, plaintiffs seek a declaration that the '951 patent is invalid and void. They also seek declarations that T & T did not convert, misappropriate, steal, or otherwise improperly obtain the trade secrets of other-wise protectable technical information of defendant, that Dean and Norris did not breach any agreements with defendant, and that defendant does not have a proprietary right to plaintiffs' method of geosteering. Plaintiffs also assert against defendant causes of action for bad-faith enforcement of the '951 patent and tortious interference with prospective business relations. In turn, defendant asserts against plaintiffs counterclaims for patent infringement and theft of trade secrets.

Plaintiffs and defendant now seek partial summary judgment as to certain of the asserted claims and counterclaims.

## II.

### Applicable Summary Judgment Principles

A party is entitled to summary judgment on all or any part of a claim as to which there is no genuine issue of material fact and as to which the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986). The moving party has the initial burden of showing that there is no genuine issue of material fact. *Anderson*, 477 U.S. at 256, 106 S.Ct. at 2514. The movant may discharge this burden by pointing out the absence of evidence to support one or more essential elements the non-moving party's claim "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25, 106 S.Ct. 2548, 2552–54, 91 L.Ed.2d 265 (1986). Once the moving party has carried its burden under Rule 56(c), the non-moving party must do more than merely show that there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986). The party opposing the motion may not rest on mere allegations or denials of pleading, but must set forth specific facts showing a genuine issue for trial. *Anderson*, 477 U.S. at 248, 256, 106 S.Ct. at 2510, 2514. To meet this burden, the nonmovant must "identify specif-

ic evidence in the record and articulate the 'precise manner' in which that evidence support[s] [its] claim[s]." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 195, 130 L.Ed.2d 127 (1994). An issue is material only if its resolution could affect the outcome of the action. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. Unsupported allegations, conclusory in nature, are insufficient to defeat a proper motion for summary judgment. *Simmons v. Lyons*, 746 F.2d 265, 269 (5th Cir.1984).

The standard for granting a summary judgment is the same as the standard for a directed verdict. *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. at 2552. If the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. *Matsushita*, 475 U.S. at 597, 106 S.Ct. at 1361.

### III.

*Plaintiffs' Motion for Partial Summary Judgment—Patent Validity*

■ Plaintiffs contend that they are entitled to summary judgment on their claim for a declaration that the '951 patent is invalid because the patent was anticipated by certain publications printed prior to the filing date for the '951 patent and by a United States patent filed prior to the filing date for the '951 patent.

A patent fails the requirement of novelty, and is thus invalid, if the invention was "anticipated" by a prior art reference. *See* 35 U.S.C. § 102. Invalidity based on anticipation requires that the same invention, including each and every element and limitation of the claims[1] made in the patent, was known or used by others before it was invented by the patentee. *Hoover Group, Inc. v. Custom Metalcraft, Inc.*, 66 F.3d 299, 302 (Fed.Cir. 1995). In other words, for a patent to be anticipated by a prior art reference, every element of every claim made by such patent must be found in the single prior art reference. *Richardson v. Suzuki Motor Co., Ltd.*, 868 F.2d 1226, 1236 (Fed.Cir.), *cert. denied*,

493 U.S. 853, 110 S.Ct. 154, 107 L.Ed.2d 112 (1989). Such elements must be literally present in the single prior art reference, and they must be arranged as in the claim. *Id.* That is, the single prior art reference must show the identical invention in as complete detail as contained in the patent claim. *Id.* However, the prior art reference need not utilize the same language as the patent. *Structural Rubber Prods. Co. v. Park Rubber Co.*, 749 F.2d 707, 716 (Fed.Cir.1984); *Phillips Petroleum Co. v. United States Steel Corp.*, 673 F.Supp. 1278, 1287 (D.Del.1987), *aff'd*, 865 F.2d 1247 (Fed.Cir.1989). The single prior art reference may not be combined with other references to render anticipation. *Studiengesellschaft Kohle m.b.H. v. Dart Indus., Inc.*, 726 F.2d 724, 726–27 (Fed.Cir. 1984). However, it is permissible to look to other references to interpret the allegedly anticipating reference, as long as the teachings of the other references are not used to establish the anticipation. *E.g., Studiengesellschaft*, 726 F.2d at 726–27.

Construction of a patent, including terms of art within its claims, is a question of law. *Markman v. Westview Instruments, Inc.*, —— U.S. ——, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). But then, anticipation is a question of fact. *Scripps Clinic & Research Found. v. Genentech, Inc.*, 927 F.2d 1565, 1576 (Fed.Cir.1991). The party attempting to demonstrate the invalidity of a patent has the burden of doing so by clear and convincing evidence. *See Scripps*, 927 F.2d at 1576; *Jamesbury Corp. v. Litton Indus. Prods., Inc.*, 756 F.2d 1556, 1559 (Fed.Cir.1985). The fact question of anticipation is determined from the perspective of one of ordinary skill in the art. *Scripps*, 927 F.2d at 1576. In other words, anticipation exists only if one of ordinary skill in the art would interpret no difference between the invention claimed and the single prior art reference. *Id.*

Having considered the summary judgment evidence presented on the issue of anticipation, the court cannot conclude that the record establishes as a matter of law that

---

1. A "claim" is that portion of the patent document that defines the scope of the patentee's rights. *Markman v. Westview Instruments, Inc.,*

—— U.S. ——, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996).

the '951 patent is invalid due to anticipation. Therefore, plaintiffs' motion for partial summary judgment on the validity of the '951 patent should be denied.

## IV.

*Plaintiffs' Motion for Partial Summary Judgment—Theft of Trade Secrets*

■ Plaintiffs assert that they are entitled to summary judgment on defendant's counterclaim for trade secret misappropriation because the claim is time barred under the two-year statute of limitations set forth in Tex.Civ.Prac. & Rem.Code § 16.003. In response, defendant concedes that plaintiffs' alleged misappropriation of defendant's trade secrets occurred at least as early as July 1993, more than two years prior to the filing of its counterclaim. Defendant argues, however, that its counterclaim is not barred by limitations, because such counterclaim arose out of the same transaction or occurrence that is the basis of plaintiffs' declaratory relief claim filed on December 29, 1996, and because defendant filed its counterclaim in response to plaintiffs' second amended complaint within thirty days after defendant's answer to the second amended complaint was due.

The two-year limitations period found in 16.003 is subject to the following provisions:

(a) If a counterclaim or cross claim arises out of the same transaction or occurrence that is the basis of an action, a party to the action may file the counterclaim or cross claim even though as a separate action it would be barred by limitation on the date the party's answer is required.

(b) The counterclaim or cross claim must be filed not later than the 30th day after the date on which the party's answer is required.

Tex.Civ.Prac. & Rem.Code § 16.069 (Vernon 1996).

In this case, plaintiffs' second amended complaint was filed on December 20, 1995, wherein Dean and Norris were added as plaintiffs, and plaintiffs added their claim for a declaration that they had not misappropriated defendant's trade secrets. On December 29, 1995, defendant filed its counterclaim, alleging that Dean and Norris misappropriated defendant's trade secrets. It is clear that defendant's counterclaim arises out of the same transaction or occurrence that is the basis of plaintiffs' declaratory judgment action (indeed, plaintiffs do not contend otherwise), and was filed within the time limit prescribed by § 16.069. Thus, under § 16.069, defendant's counterclaim is not barred by limitations. Consequently, plaintiffs' motion for partial summary judgment on defendant's counterclaim for theft of trade secrets should be denied.

## IV.

*Defendant's Motion for Partial Summary Judgment*

A. *Plaintiffs' Count Two: Bad–Faith Enforcement of the '951 Patent*

Plaintiff's claim for bad-faith enforcement of the '951 patent is not clearly stated, and therefore, it is not apparent whether plaintiffs assert claims under § 1 of the Sherman Act, 15 U.S.C. § 1, or § 2 of the Sherman Act, 15 U.S.C. § 2, or both. As a result, the court considers potential claims under both sections. First, however, the court addresses the issue of whether plaintiffs have standing to assert an antitrust claim.

1. *Antitrust Standing*

■ Defendant argues that it is entitled to summary judgment on plaintiffs' bad-faith claim because plaintiffs cannot prove an antitrust injury and because plaintiffs have no antitrust standing. Although defendant asserts these two points separately, they are in fact part of the same inquiry, as "[a]ntitrust injury is a component of the standing inquiry, not a separate qualification." *Bell v. Dow Chem. Co.,* 847 F.2d 1179, 1182 (5th Cir. 1988). Only consumers and competitors have standing to sue. *See id.* at 1183.

In considering whether plaintiffs have shown an antitrust injury, the court bears in mind that the antitrust laws "were enacted for 'the protection of *competition,* not *competitors.*'" *Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.,* 429 U.S. 477, 488, 97 S.Ct. 690, 697, 50 L.Ed.2d 701 (1977) (quoting

*Brown Shoe Co. v. United States*, 370 U.S. 294, 320, 82 S.Ct. 1502, 1521, 8 L.Ed.2d 510 (1962)) (emphasis in original). "An antitrust plaintiff must show not just that the defendants' actions injured him, but that they unreasonably restrained competition."[2] *Kiepfer v. Beller*, 944 F.2d 1213, 1221 (5th Cir.1991).

The court is unwilling at this time to conclude that the evidence is insufficient to raise a raise a fact issue as to antitrust injury. Certainly, much of the summary judgment evidence shows only that plaintiffs have lost customers, and, at best, simply implies that such loss is the result of anything done by defendant. *See, e.g.*, Plaintiffs' Second Response, Ex. B, ¶¶ 11–12, 27, 35, 39; *id.*, Ex. C., ¶ 12–16; *id.*, Ex. D, ¶¶ 5–8; *id.*, Ex. G at 33 & ex. 3. Even if such evidence could support a finding that defendant's action caused such loss, it would still only show injury to plaintiffs, and not injury to competition. However, the court cannot ignore other summary judgment evidence tending to show that defendant's actions have unreasonably restrained competition. *See, e.g.*, Defendant's Reply, Ex. H, Plaintiffs' Answer to Interrogatory No. 14, at 5–6. The court determines that the summary judgment evidence raises a fact issue as to antitrust injury.

Defendant's assertion that T & T lacks standing to sue boils down to a contention that T & T is neither a consumer nor a competitor, and therefore is not a proper antitrust plaintiff. The court agrees that there is no evidence establishing that T & T is a consumer for purposes of this action. However, the evidence showing that both T & T and defendant offer geosteering services to the same range of consumers is sufficient to at least create a fact issue as to whether T & T is a competitor, and thus a plaintiff with antitrust standing in this action.

■ As for Dean and Norris, defendant asserts that they are not proper antitrust

plaintiffs because any injury they might have suffered would be merely a derivative injury they suffered in their role as officers and shareholders of T & T. Plaintiffs apparently concede this point, inasmuch as they failed to even mention it in their response. To have standing, a person must be one against whom anticompetitive activity is directed, and not one who has merely suffered indirect, secondary, or remote injury. *Midwestern Waffles, Inc. v. Waffle House, Inc.*, 734 F.2d 705, 710 (11th Cir.1984). Thus, Dean and Norris, as officers and shareholders of T & T, lack standing to bring their antitrust claim. *See, e.g., Rand v. Anaconda–Ericsson, Inc.*, 794 F.2d 843, 849 (2nd Cir.), *cert. denied*, 479 U.S. 987, 107 S.Ct. 579, 93 L.Ed.2d 582 (1986); *Midwestern Waffles*, 734 F.2d at 710–11. Accordingly, as to Dean and Norris, defendant is entitled to summary judgment on the bad-faith claim.

### 2. *Claim Under § 2 of the Sherman Act*

■ As for a claim under § 2 of the Sherman Act, defendant argues first that it is entitled to summary judgment because plaintiffs have not met their burden of pleading and proving all elements of a § 2 attempted monopolization claim.

Unlawful enforcement of a patent procured by fraud, or of an invalid patent, does not alone establish an antitrust violation. Rather, plaintiffs must also establish the elements of a violation of 15 U.S.C. § 2. *Walker Process Equip., Inc. v. Food Machinery & Chem. Corp.*, 382 U.S. 172, 86 S.Ct. 347, 15 L.Ed.2d 247 (1965); *Buehler AG v. Ocrim S.p.A.*, 836 F.Supp. 1305, 1325 (N.D.Tex. 1993), *aff'd*, 34 F.3d 1080 (Fed.Cir.1994). Thus, in order to prevail on a § 2 claim for attempted monopolization, plaintiffs must prove that (1) defendant engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) there is a dangerous probability of defendant achieving monopoly power.[3] *Spectrum Sports, Inc. v.*

---

2. An antitrust injury must be established for either a section 1 or a section 2 claim. *Doctor's Hosp. of Jefferson, Inc., v. Southeast Medical Alliance, Inc.*, 897 F.Supp. 290, 292 (E.D.La.1995).

3. In contrast to the elements of an attempted monopolization claim under section 2, the elements of a monopolization claim under section 2 are (1) the possession of monopoly power in the relevant market and (2) willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic

*McQuillan,* 506 U.S. 447, 456, 113 S.Ct. 884, 890, 122 L.Ed.2d 247 (1993); *C.A.T. Indus. Disposal, Inc. v. Browning–Ferris Indus., Inc.,* 884 F.2d 209, 210 (5th Cir.1989). Mere evidence of market success is not sufficient to support a conclusion that there is a dangerous probability of defendant achieving monopoly power. *Cf. Roy B. Taylor Sales, Inc. v. Hollymatic Corp.,* 28 F.3d 1379, 1387 (5th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 779, 130 L.Ed.2d 673 (1995). A defendant must have some legally significant share of the market before he approaches the level of dangerous probability of monopolization. *C.A.T.,* 884 F.2d at 211. It is not permissible to infer a dangerous probability simply from a showing of intent. *Spectrum Sports,* 506 U.S. at 457–60, 113 S.Ct. at 891–92.

Identification of the relevant market is a prerequisite to evaluating a § 2 claim. *Domed Stadium Hotel, Inc. v. Holiday Inns, Inc.,* 732 F.2d 480, 487 (5th Cir.1984); *e.g., Buehler AG,* 836 F.Supp. at 1325. Plaintiffs are required to prove the relevant market. *Bathke v. Casey's Gen. Stores, Inc.,* 64 F.3d 340, 344–45 (8th Cir.1995); *see Spectrum Sports,* 506 U.S. at 455–56, 113 S.Ct. at 890–91. A "market" is the group of sellers who have the "actual or potential ability to deprive each other of significant levels of business." *Rebel Oil Co., Inc. v. Atlantic Richfield Co.,* 51 F.3d 1421, 1434 (9th Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 515, 133 L.Ed.2d 424 (1995). The relevant market is defined in terms of both geography and product. *Flegel v. Christian Hosp. Northeast–Northwest,* 4 F.3d 682, 689 (8th Cir. 1993). The proper market definition requires "a factual inquiry into the 'commercial realities' faced by consumers." *Eastman Kodak Co. v. Image Tech. Servs., Inc.,* 504 U.S. 451, 482, 112 S.Ct. 2072, 2090, 119 L.Ed.2d 265 (1992).

Plaintiffs assert that the relevant market is "geosteering-related services for oil and gas exploration and production in the Austin Chalk." Plaintiffs' Second Response at 4. With respect to the product market, the court determines that plaintiffs have presented sufficient evidence to create an issue of fact as to their position. *E.g.,* Plaintiffs' Second Response, Ex. C, ¶ 9. As for the geographic market, however, the evidence offered by plaintiffs in support of their contended relevant market simply shows that the Austin Chalk is recognized in the industry, and by defendant, as a distinct market, and does not support a finding that the Austin Chalk is the relevant geographic market for purposes of this action. In addition, although the evidence shows that the Austin Chalk is an area extending from South and Central Texas into Louisiana, *e.g.,* Plaintiffs' Second Response, Ex. A at 1, evidence that T & T currently does business not only in Texas and Louisiana, but also in Oklahoma and New Mexico, Defendant's Motion, Ex. A, Dean Deposition at 170, shows that the relevant geographic market must be broader than just the Austin Chalk. And, the evidence that T & T currently only does business in four states does not limit the relevant market to such states, but simply shows that is the only market in which T & T is currently doing business. Indeed, evidence that T & T hopes to expand its operations to other states and other countries, *id.* at 177–79, reveals that T & T recognizes the relevant market to be larger than the Austin Chalk. In fact, the evidence shows that plaintiffs recognize that the market in which T & T competes extends at least to every area in the country, and possibly in the world, where geologic navigation for horizontal drilling is done. *See* Defendant's Motion, Ex. A, Dean Deposition at 177–80, 204–05, 211–16. Furthermore, the facts in this case are distinguishable from those in the case relied upon by plaintiffs, *United States v. Philadelphia Nat'l Bank,* 374 U.S. 321, 83 S.Ct. 1715, 10 L.Ed.2d 915 (1963), in which a four-county area was determined to be an appropriate geographical definition of a market despite some activity on a national level from within that area. In *Philadelphia Nat'l Bank,* the nature of the banking business at issue re-

accident. *Eastman Kodak Co. v. Image Technical Servs. Inc.,* 504 U.S. 451, 481, 112 S.Ct. 2072, 2089, 119 L.Ed.2d 265 (1992); *Domed Stadium Hotel, Inc. v. Holiday Inns, Inc.,* 732 F.2d 480, 487 (5th Cir.1984). Although plaintiffs' complaint did not clearly state their section 2 claim, it is apparent from plaintiffs' response to defendant's motion that plaintiffs allege not monopolization, but only attempted monopolization. *See, e.g.,* Plaintiffs' Response at 3.

quired proximity to customers, and the Court relied on this fact in concluding that the relevant market consisted of the immediate four-county area around the banks. In contrast, plaintiffs' business requires no proximity at all to their customers. Indeed, Dean testified that, for efficiency, T & T does all of its work in Fort Worth, communicating with clients by fax. Defendant's Motion, Ex. A, Dean Deposition at 189. Dean further testified that, given this means of operation, T & T could do business anywhere in the world that has good reliable telephone connections. *Id.* at 189–90.

Even assuming the relevant market to be that described by plaintiffs, the court finds that plaintiffs have failed to adduce sufficient evidence to create a genuine issue on any element of their § 2 claim. Plaintiffs have offered no evidence in support of their contention that defendant knew "that the patent was fraudulently procured, or at least invalid." [4] Plaintiffs' Second Response at 11. Plaintiffs have offered no evidence that would support a finding that defendant engaged in predatory or anticompetitive conduct, or that defendant has, or had, a specific intent to monopolize. Plaintiffs have offered no evidence that would support a finding that defendant has a legally significant share of the relevant market, and thus no evidence that there is a dangerous probability of defendant achieving monopoly power. As a result, defendant is entitled to summary judgment on plaintiffs' bad-faith enforcement claim, to the extent such claim is brought under § 2 of the *Sherman* Act.

### 3. *Claim under § 1 of the Sherman Act*

■ Defendant asserts that, to the extent plaintiffs purport to bring a claim under § 1 of the Sherman Act, defendant is entitled to summary judgment because plaintiffs have failed to allege any concerted action between defendant and any other entity. It is recognized, and plaintiffs do not dispute, that § 1 prohibits "unreasonable restraints of trade effected by a 'contract, combination ... or conspiracy' between *separate* entities," *Copperweld Corp. v. Independence Tube Corp.,*

467 U.S. 752, 768, 104 S.Ct. 2731, 2740, 81 L.Ed.2d 628 (1984) (emphasis in original) and that § 1 "does not reach conduct that is 'wholly unilateral,'" *id.,* and that "the conduct of a single firm is governed by § 2 alone," *id.* at 767, 104 S.Ct. at 2739. Plaintiffs have not alleged, much less attempted to prove, any concerted action between defendant and any other entity in violation of § 1. Indeed, in response to defendant's motion for partial summary judgment on plaintiffs' bad-faith claim, plaintiffs discuss only a § 2 claim. For these reasons, the court concludes that defendant is entitled to summary judgment on plaintiffs' bad-faith claim to the extent plaintiffs purport to bring a § 1 claim.

### 4. *Summary*

Defendant is entitled to summary judgment on plaintiffs' bad-faith enforcement claim for a number of reasons. As to Dean and Norris, defendant is entitled to summary judgment because neither Dean nor Norris has antitrust standing. As to all plaintiffs, defendant is entitled to summary judgment because (1) plaintiffs have not met their burden of proving all elements of a § 2 attempted monopolization claim, and (2) plaintiffs have not alleged, much less attempted to prove, a § 1 claim.

### B. *Plaintiffs' Count Three: Tortious Interference with Prospective Business Relations*

Defendant asserts that it is entitled to summary judgment on plaintiffs' tortious interference claim.

■ Under Texas law, the elements of a cause of action for tortious interference with prospective contractual or business relations are (1) a reasonable probability that the plaintiff would have entered into a contractual relationship, (2) an intentional and malicious act by the defendant that prevented the relationship from occurring, with the purpose of harming the plaintiff, and (3) actual harm or damage resulted from the defendant's interference. *Exxon Corp. v. Allsup,* 808 S.W.2d 648, 659 (Tex.App.—Corpus Christi

---

**4.** The evidence only shows that plaintiffs informed defendant that they believed the '951 patent to be invalid. *See* Plaintiffs' Response, Ex. H.

1991, writ denied); *see also In re Burzynski,* 989 F.2d 733, 739 (5th Cir.1993); *C.E. Servs., Inc. v. Control Data Corp,* 759 F.2d 1241, 1249 (5th Cir.), *cert. denied,* 474 U.S. 1037, 106 S.Ct. 604, 88 L.Ed.2d 583 (1985); *Leonard Duckworth, Inc. v. Michael L. Field & Co.,* 516 F.2d 952, 956 (5th Cir.1975). Justification on the part of the defendant is an affirmative defense on which the defendant bears the burden of pleading and proof. *In re Burzynski,* 989 F.2d at 739.

■ There is no summary judgment evidence that would support a finding that defendant maliciously interfered with plaintiffs' prospective business relations. Moreover, the presumption that the '951 patent is valid entitles defendant to a presumption that its efforts in enforcing such patent were in good faith.[5] *See Mallinckrodt, Inc. v. Medipart, Inc.,* 976 F.2d 700, 709–10 (Fed.Cir.1992); *see also Atari Games Corp. v. Nintendo of Am., Inc.,* 897 F.2d 1572, 1577–78 (Fed.Cir. 1990). Therefore, the court concludes that defendant is entitled to summary judgment on plaintiffs' claim of tortious interference.

## V.

### ORDER

The court ORDERS that:

1. Plaintiffs' motion for partial summary judgment on their claim for a declaratory judgment that the '951 patent is invalid be, and is hereby, denied;

2. Plaintiffs' motion for partial summary judgment on defendant's counterclaim for theft of trade secrets be, and is hereby, denied; and,

3. Defendant's motion for partial summary judgment be, and is hereby, granted, and plaintiffs' claims against defendant for bad-faith enforcement and for tortious interference be, and are hereby, dismissed.

The court determines that there is no just reason for delay in, and hereby directs, entry of final judgment as to the dismissal of plain-

tiffs' claims against defendant for bad-faith enforcement and for tortious interference.

### ORDER

After having considered the motion of plaintiffs, T & T Geotechnical, Inc., Timothy C. Dean, and Terry L. Norris, for reconsideration of denial of summary judgment on misappropriation of trade secrets, the court has determined that such motion should be denied. The court is satisfied that its summary judgment ruling, and the reasons it gave therefor, are correct. Moreover, the court is persuaded by the response of defendant, Union Pacific Resources Company, to the motion for reconsideration that there are other, and alternative, reasons why the summary judgment ruling is correct. Therefore,

The court ORDERS that such motion for reconsideration be, and is hereby, denied.

---

5. Plaintiffs concede this point, at least to a certain degree:

   At best, the presumption of validity entitles UPRC to a presumption that their enforcement efforts were in good faith. *Atari,* 897 F.2d at 1577.
   Plaintiffs' Response at 23.